712 So.2d 1245 (1998)
FEDERATED MUTUAL INSURANCE COMPANY, Appellant,
v.
William G. GERMANY, et al., Appellees.
No. 97-2110.
District Court of Appeal of Florida, Fifth District.
July 2, 1998.
*1246 David P. Healy, of Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, and Laura J. Hanson, William M. Hart and Susan M. Radde, of Meagher & Gear, P.L.L.P., Minneapolis, MN, for Appellant.
Allen C.D. Scott, II, and Holly E. Scott, of Scott & Scott, Attorneys at Law, P.A., St. Augustine, for Appellees.
GRIFFIN, Chief Judge.
Appellant, Federated Mutual Insurance Company, seeks review of an order entered on a third-party complaint determining that an insurance company had a duty to defend a former "insured." Because the claim is not covered under the subject policy, we reverse.
Bill Germany, Inc. ["Germany" or "the company"], leased and operated a service station located in Palatka, Florida from 1982 until late 1989 or late 1990. The company carried pollution liability insurance with Federated Mutual Insurance Company ["Federated" or "the insurer"]. The policy included liability coverage for third-party bodily injury and property damage, which was co-extensive with the insurer's duty to defend. Regarding cancellation, the policy provided:
A. CANCELLATION
1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least
a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.
These cancellation provisions were amended by an endorsement, which was added to comply with the requirements of Chapter 376 of the Florida Statutes, and which the policy stated was to be interpreted as providing the coverage required by 40 CFR 280.90 280.11. The endorsement provided for a sixty-day delay in the effective date of the cancellation where the cancellation was made by the insurer:
(d) Cancellation or any other termination of the insurance by the insurer will be effective only after the expiration of 60 days after a copy of such written notice is received by the insured.
The endorsement also provided for a six-month extended reporting period after cancellation:
(e) The insurance covers claims for any occurrence that commenced during the term of the policy (subsequent to the retroactive date) that is discovered and reported to the insurer within six months of the effective date of the cancellation or termination of the policy.
Germany sent Federated a letter of cancellation dated October 6, 1989. The letter asked for a retroactive cancellation of the policy as of September 12, 1989. It stated:
Please cancel my pollution liability package with a $26,480.00 premium as of September 12, 1989. I have decided to move *1247 my coverage to the state insurance program.
Federated processed Germany's cancellation and acknowledged cancellation of the policy in a letter dated December 8, 1989. The letter stated:
At your request, the policy has been canceled effective September 12, 1989. Cancellation of your policy eliminates coverage for Pollution Liability claims (clean-up or third party liability) made after 9/12/89 (the date of your cancellation). Premium is being refunded to you on a pro rata basis and will be applied to your account.
Germany turned control of the station over to Kenneth Deford ["Deford"] in late 1989, who later transferred control of the station to Ronnie Rayburn ["Rayburn"]. Deford discovered petroleum contamination in a monitoring well on March 19, 1990. On March 29, 1990, the Florida Department of Environmental Protection also discovered free product in a monitoring well. The potential contamination was reported to Federated shortly thereafter.
Germany was issued a Notice of Violation and Orders for Corrective Action some three and a half years later, on November 16, 1993. Shortly before the notice was issued, on October 19, 1993, the owners of the underlying property, the Dawseys ["the owners"], brought an action against Germany, Deford and Rayburn to recover damages due to petroleum contamination from underground storage tanks. The complaint contained counts for common law waste, breach of a covenant not to commit waste, and violation of Chapter 376 due to the prohibited "discharge" of a pollutant. See § 376.305, .313, Fla. Stat. (1987).
Deford apparently filed a crossclaim against Germany and its owners, William and Kathy Germany [collectively "the Germanys" or appellees].[1] Thereafter, the Germanys filed a one count third-party complaint against Federated, in which they sought damages for Federated's breach of its contractual duty to defend. Ultimately, the Germanys did not seek a declaratory judgment regarding Federated's duty to defend. The lower court entered a lengthy order which concludes with the following analysis:

Stated in interrogatory form, "Does Section 40 CFR Sec. 280.97, (d) require the cancellation date to be effective 60 days after the written notice received by the insured, when the insured initiates the cancellation?"
If the answer is no, then the insurer prevails and Summary Judgment should issue. If the answer is yes, then the insured prevails and Summary Judgment is precluded.
The insured urges construction clauses in insurance contracts should be resolved in favor of coverage and not avoid it. This is a general rule of insurance. See Universal Underwriters etc v. Steve Hull Chevrolet, 513 So.2d 218, (1st DCA 1987)[sic]. The counter argument, of course, is this is a mandate provision required by law and not by contract initiated by the insurance company.
There is no question the provision in the Code does not differentiate between cancellations initiated by the insurer or the insured. There is long standing law in the insurance "arena" to the effect where a policy is capable of two different constructions, the Court should adopt the construction favorable to the insured and/or coverage. Hulse v. BC/BS, 424 So.2d 191 (5 DCA 1983)[sic].
Because of the uncertainty in the applicability of the clause, the issue must be resolved in favor of the insured.
Accordingly, it is ADJUDGED, the Motion for Summary Judgment as to the issue posed by FEDERATED MUTUAL INSURANCE COMPANY, is denied.
The case was later reassigned to a successor judge. Federated renewed its motion for summary judgment yet again. The court again denied the motion, stating:
1. The 60 day cancellation provision is capable of two different constructions.
2. Where a policy provision is capable of two different constructions, the Court must *1248 adopt the construction favorable to the insured;
3. The 60 day cancellation notice provision applies in this case, and the effective date of cancellation is extended 60 days from the insured's receipt of Federated's December 8, 1989 letter;
4. The endorsement in the Pollution Liability Policy adding the sixth month extended reporting period modified the policy to require only that the occurrence be discovered and reported by the insured within six months following the effective date of termination;
5. Whether Germany discovered and reported the occurrence to Federated within the extended reporting period is an issue of fact not subject to summary judgment....
We begin by pointing out that the meaning of the provision in issue is a question of law which this court reviews de novo. Jones v. Utica Mut. Ins. Co., 463 So.2d 1153 (Fla.1985). The best we can discern the reasoning behind the lower court's repeated conclusion that the policy provision delaying expiration of coverage for sixty days applied to the facts of this case is the notion that the request of the insured for cancellation of the policy results in the act of cancellation by the insurer; therefore, this was a cancellation of the insurance "by the insurer" within the meaning of subparagraph (d). The court reasoned that the provision was ambiguous because of its failure to "differentiate between cancellations initiated by the insurer or the insured." The court concluded that the policy was therefore capable of two different constructions, and adopted the construction most favorable to the insured.
The trial court's interpretation of the policy is based on an unnatural construction of the policy terms. While it is true that an ambiguity may exist in an insurance policy when the terms of the contract are subject to different interpretations, the courts are not permitted to put strain and unnatural construction on the terms of the policy in order to create uncertainty or ambiguity. Thomas v. Prudential Prop. and Cas., 673 So.2d 141 (Fla. 5th DCA 1996); Jefferson Ins. Co. v. Sea World, Inc., 586 So.2d 95 (Fla. 5th DCA 1991). Instead, insurance contracts must be read in light of the skill and experience of ordinary people, and terms contained in an insurance contract must be given their plain, unambiguous and common meaning. Green v. Life & Health of America, 704 So.2d 1386 (Fla.1998); Thomas, 673 So.2d at 142; Progressive Am. Ins. Co. v. Florida Bank, 452 So.2d 42 (Fla. 5th DCA 1984).
The provision at issue in this case plainly applies only where the insurer has initiated the cancellation or other termination of an insurance policy. If there is any genuine doubt about who cancels a policy, i.e. whether an insured cancels or merely requests an insurer to cancel, this question is answered in the policy. The section on cancellation which we have reproduced above is divided into two sections differentiated by who cancels: (1) subsection (1): "the ... insured ... may cancel ..." or (2) subsection (2): "we [the insurer] may cancel ...".
The lower court's conclusion is all the more surprising because the provision at issue is mandated by federal rule. Manifestly, if ambiguity is perceived, the court's duty is to attempt to determine the intent of the rule, not to construe the rule in favor of coverage. The obvious purpose of the provision is to protect a policyholder from a sudden gap in coverage caused by an insurer's involuntary cancellation or termination of the policy. See 54 Fed.Reg. 47077-02 (1989); see also Cat `N Fiddle, Inc. v. Century Ins. Co., 213 So.2d 701 (Fla.1968) (purpose of provision in insurance policy providing for cancellation only after notice to insured for prescribed period is to permit insured to obtain insurance elsewhere without exposure). The sixty-day delay in cancellation is designed to permit a policyholder to obtain new coverage prior to the effective date of the cancellation or other termination of the insurance (such as by non-renewal). It is not meant to apply where the policyholder has sent notice of cancellation of the policy to the insurer, who then cancels the policy at the insured's request and on the date the insured requests.
We hold that under the cancellation provisions of this policy, the Germanys' cancellation of the policy became effective on *1249 September 12, 1989, in accordance with the letter of cancellation sent by the Germanys. Pursuant to the endorsement, the Germanys had an additional six months to discover and report to the insurer any "occurrence" covered by the policy. This six-month extended reporting period ended no later than March 12, 1990.
REVERSED and REMANDED for proceedings consistent with this opinion.
PETERSON, J., concurs.
GOSHORN, J., concurs in result only.
NOTES
[1] The crossclaim was not included in the record on appeal.