ZURICH AMERICAN INSURANCE
COMPANY, Plaintiff–Appellee,

v.

WHITTIER PROPERTIES INC. d.b.a.
Zipmart, Defendant–Appellant,

and

Ribelin Lowell & Company Insurance
Brokers, Inc., Defendant.

No. 02–36101.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 2003.

Filed Jan. 29, 2004.

George R. Lyle, Guess & Rudd P.C., Anchorage, AK, for the defendant-appellant.

Dennis H. Walters, Karr Tuttle Campbell, Seattle, WA, and Matthew D. Regan, Holmes Weddle & Barcott, Anchorage, AK, for the plaintiff-appellee.

Alex M. Swiderski, Assistant Attorney General, Anchorage, AK, for State of Alaska, Amici Curiae.

R. Justin Smith, U.S. Department of Justice, Washington, D.C., for United States of America, Amici Curiae.

Laura A. Foggan, Wiley Rein & Fielding LLP, Washington, D.C., for Complex Insurance Claims Litigation Assn., et al., Amici Curiae.

Before BRUNETTI, T.G. NELSON, and GRABER, Circuit Judges.

T.G. NELSON, Circuit Judge.

Whittier Properties, Inc. ("Whittier") appeals the district court's grant of Zurich American Insurance Company's ("Zurich's") motion for summary judgment. The district court held as a matter of law that Whittier made a material misrepresentation on its insurance application for a policy provided by Zurich and that Zurich could therefore rescind the policy and deny coverage to Whittier. We reverse the district court's determination that Zurich could rescind the policy and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1990, Whittier owned and operated a ZipMart gas station and convenience store near Sterling, Alaska. The gas station initially utilized two 10,000–gallon underground storage tanks ("USTs") in its operations. In September 1993, Whittier replaced the pipes servicing its UST system. During excavation for this procedure, the contractor encountered evidence of minimal contamination at tank fill pipes and beneath dispenser locations.

In August 1995, Whittier replaced its entire UST system, installing a new, 20,-000–gallon UST ("the new tank") in place of the two smaller USTs. Again, the contractor encountered petroleum contamination, but this time the contamination was more significant. Whittier, however, decided to install the new tank without removing the contaminated soil.

A site assessment prepared in October 1995 by an environmental contractor, New Horizons, disclosed the above contamination to the Alaska Department of Environmental Conservation ("ADEC"). Despite New Horizons' written recommendation that Whittier further investigate the extent of the contamination, Whittier failed to do so and ignored ADEC's frequent correspondence urging corrective action.

On November 29, 1999, Whittier submitted its application to Zurich for a "Storage Tank System Third–Party Liability and Corrective Action Policy" ("the policy"). In response to a query on the application form regarding contamination at the scheduled location, Whittier's owner, Yovonne Baker, indicated that she was not aware of any prior contamination. Baker purportedly believed that the question asked only if leakage or contamination had occurred from the new tank, for which Whittier was securing the policy, not whether contamination had occurred at the site where the tank was located. Relying on Baker's answers, Zurich issued the policy. For an annual premium of $350, the policy covered Whittier against third-party claims due to contamination. According to the terms of the policy, Zurich's coverage obligation was limited to any release of contamination from the new tank occurring after December 9, 1997.

In December 2001, one year after Whittier's closure of the ZipMart gas station, Gilfilliam Engineering and Environmental Testing conducted an environmental inves-

tigation of the site. The contamination levels in the soil and groundwater were substantially greater than the levels had been when the soil was tested in 1995, and nearly a foot of free gasoline product was found floating on the groundwater. This contamination quickly spread to adjacent properties.

Following Whittier's notification to Zurich in early 2002 of the potential for claims regarding the contamination, Zurich denied its obligation to indemnify any third-party claims under the policy. Instead, Zurich initiated this lawsuit, demanding rescission of the policy due to Whittier's misrepresentation on the policy application regarding former contamination at the ZipMart site. Zurich filed a motion for summary judgment, seeking rescission or denial of coverage on three alternate grounds. The district court granted Zurich's motion on the basis of Zurich's rescission argument, holding that Whittier had made a material misrepresentation on the insurance application form and that rescission was an appropriate remedy. Whittier timely appealed.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo.[1] "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law."[2] "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."[3]

We review the district court's interpretation of federal statutes and regulations de novo.[4]

## III. DISCUSSION

We assume, without deciding, that Whittier made a material misrepresentation on the Zurich insurance application. We therefore focus on the district court's holding that Zurich could rescind the policy in the event of such a misrepresentation. The district court held that, due to Whittier's misrepresentation, Zurich could rescind the policy in accordance with Alaska Statute § 21.42.110(2) and (3).[5] The statute reads in relevant part:

> Misrepresentations, omissions, concealment of facts, and incorrect statements may not prevent a recovery under the policy ... unless either (1) fraudulent; (2) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or (3) the insurer in good faith would either not have issued the policy ... or would not have issued a policy ... in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required ... by the application for the policy.... [6]

The court further held that the Environmental Protection Agency's ("EPA's") federal regulations regarding USTs, codified in 42 U.S.C. § 6991b and 40 C.F.R. § 280, place limitations only on prospective can-

**1.** *Akiak Native Cmty. v. U.S. Postal Serv.*, 213 F.3d 1140, 1144 (9th Cir.2000).

**2.** *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir.2002).

**3.** *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.1995).

**4.** *See League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Forsgren*, 309 F.3d 1181, 1183 (9th Cir.2002).

**5.** ALASKA STAT. § 21.42.110(2), (3) (2002).

**6.** *Id.*

cellation, not rescission, of insurance policies and that rescission was therefore permissible in this instance under state law.

We additionally assume, without deciding, that Alaska law allows the insurer to rescind in the event of misrepresentation even if the insurance is mandated by law, as is the UST policy at issue in this case, and even if rescission of the policy would negatively affect innocent third parties.[7] Nevertheless, we do not agree that the remedy of rescission may be employed in this case, for the reasons explained below.

### A. *Relevant State and Federal Law Governing USTs*

Both state and federal regulations govern the operation of USTs in Alaska, and both require proof of "financial responsibility" for the operation of a gas station with a UST.[8] The financial responsibility requirement can be met by a specified amount of insurance coverage.[9]

Federal regulations, crafted by the EPA, specify the manner in which a UST insurance policy may be cancelled in the event of the insured's misconduct. The regulations mandate:

*Cancellation or any other termination* of the insurance by the ["Insurer" or "Group"], except for non-payment of premium *or misrepresentation* by the

insured, will be effective only upon written notice and only after the expiration of 60 days after a copy of such written notice is received by the insured. Cancellation for non-payment of premium *or misrepresentation* will be effective only upon written notice and only after expiration of a minimum of 10 days after a copy of such written notice is received by the insured.[10]

"Termination," or cancellation, of a policy is defined as "those changes that could result in a gap in coverage."[11] Any terms in a policy that are inconsistent with these regulations are "amended to conform with" the regulations.[12]

The federal regulations allow a state to implement, with EPA approval, its own UST program to take the place of the federal program.[13] EPA approval of a state UST program rests on whether the program adequately provides for contamination release detection, prevention, and correction, including requirements of proof of financial responsibility for all UST operators.[14] Alaska has not submitted a state UST program for EPA approval, so the federal regulations remain in full effect in Alaska. Nevertheless, Alaska has enacted its own regulations regarding financial responsibility for USTs and termination of policies due to misrepresentation. These

7. These issues are currently undecided under Alaska state law.

8. ALASKA STAT. § 46.03.405(2) (2002); ALASKA ADMIN. CODE tit. 18, § 78.910 (2003); 40 C.F.R. §§ 280.90–280.115 (2003); 42 U.S.C. § 6991b(d) (1994).

9. ALASKA STAT. § 46.03.405(2) (2002); ALASKA ADMIN. CODE tit. 18, § 78.910 (2003); 40 C.F.R. §§ 280.90–280.115 (2003); 42 U.S.C. § 6991b(d) (1994).

10. 40 C.F.R. § 280.97(b) (2003) (emphasis added); *see also* 40 C.F.R. § 280.109 (2003).

11. 40 C.F.R. § 280.92 (2003). Section 280.92 defines "[t]ermination under § 280.97(b)(2)."

In both subsections of § 280.97(b), "cancellation" is referred to as a subcategory of "termination," as follows: "Cancellation or any other termination of the insurance...." Therefore, because cancellation is a type of termination, it cannot be defined more broadly than "termination" and must also be limited to "only those changes that could result in a gap in coverage." *Id.* § 280.92.

12. 40 C.F.R. § 280.97(b) (2003).

13. 42 U.S.C. § 6991c(d) (2003).

14. 42 U.S.C. § 6991c(a) (2003).

state regulations, however, are nearly identical to the federal regulations.[15] Additionally, Alaska has incorporated the federal UST program by reference.[16]

## B. *The EPA Regulations Preclude the Remedy of Rescission for UST Insurance Policies*

■ Contrary to the district court's holding, we hold that the EPA regulations, which Alaska has expressly adopted in its own state regulations,[17] provide for the *exclusive* remedy of prospective cancellation of a UST insurance policy in the event of an insured's misrepresentation. Although Alaska Statute § 21.42.110 generally permits rescission of insurance policies due to misrepresentation, the text of the statute does not show it to specifically apply to statutorily mandated insurance policies covering USTs.[18] The EPA's regulations, however, specifically govern UST insurance policies and the remedies available in conjunction with such policies.[19] These more specific regulations provide only for prospective termination of statutorily required UST insurance policies following notice to the insured as a remedy for misrepresentation; they do not provide for voidance of the policy *ab initio*.[20]

Zurich argues, and the district court agreed, that the EPA regulations' reference to necessary procedures for "cancellation" and "termination" do not encompass situations warranting rescission. In particular, Zurich points to the text of 40 C.F.R. § 280.92, which defines "termination" as "only those changes that could result in a gap in coverage."[21] Rescission, argues Zurich, does not result in a "gap in coverage," because the rescinded policy is held never to have existed.

■ The EPA requirements that a UST operator must provide proof of financial responsibility and that a UST insurer must give notice of cancellation of insurance to the UST operator prior to the policy's cancellation were enacted because of concerns over the negative effect that a UST operator's inability to fund cleanup of contamination could have on the environment and on innocent third parties.[22] These requirements seek to avoid "gaps" during which an operator would not be insured. Zurich's interpretation of the EPA regulations renders nearly meaningless the EPA's efforts to avoid periods of uninsured UST operation. Nevertheless, this limited interpretation of the regulations might have been upheld by this court as passably reasonable were it not for the fact that the EPA has filed an *amicus curiae* brief clarifying its position on the correct interpretation of its own regulations. Contrary to Zurich's reading of the regulations, the EPA clearly states that the definition of "termination" or "cancellation" found in 40 C.F.R. § 280.92 encompasses rescission.

**15.** *Compare* Alaska Stat. § 21.36.210(f)(3) (2002), Alaska Stat. § 21.36.220 (2002) *with* 40 C.F.R. §§ 280.90–280.115 (2003), 40 C.F.R. § 280.97(b) (2003), 42 U.S.C. § 6991b(d) (2003).

**16.** Alaska Admin. Code tit. 18, § 78.910 (2003).

**17.** *See id.*

**18.** Alaska Stat. § 21.42.110 (2002).

**19.** 40 C.F.R. §§ 280.90–280.115 (2003); 40 C.F.R. § 280.97(b) (2003); 42 U.S.C. § 6991b(d) (2003).

**20.** 40 C.F.R. §§ 280.90–280.115 (2003); 40 C.F.R. § 280.97(b) (2003); 42 U.S.C. § 6991b(d) (2003). *See also* Alaska Stat. § 21.36.220 (2002)(mirroring the federal regulations).

**21.** 40 C.F.R. § 280.92 (2003).

**22.** *See* 54 Fed.Reg. 47077, 47080 (Nov. 9, 1989).

In its *amicus* brief, the EPA explains that its "decision to provide for a specific and detailed remedy [regarding UST insurance policies in its regulations] suggests an intention that this remedy be exclusive of other, potentially inconsistent remedies."[23] The EPA has further clarified that the

> EPA interprets the regulation's reference to "cancellation ... for misrepresentation" to refer to cancellation not in its narrower sense, as a remedy that is distinct from rescission, but in a broader sense that reaches any remedy that might allow an insurer to avoid coverage on the basis of an asserted misrepresentation by the insured....
>
> ....
>
> The structure and purpose of EPA's regulations also indicate that this cancellation provision is the exclusive remedy for misrepresentation, thus fore-closing a rescission remedy.[24]

In short, the EPA has made it clear that in crafting its UST regulations, it intended that the exclusive remedy for a UST policy provider, in the event of an insured's mis-representation, be a *future* refusal to provide insurance. This interpretation precludes the remedy of rescission.

No party challenges the validity of the regulation as a permissible interpretation of the statute.[25] Instead, Zurich challenges the EPA's interpretation of its own regulations, which is entitled to great judicial deference.[26] The fact that the EPA communicated its interpretation in the form of an amicus brief does not alter this high level of deference.[27] The EPA's interpretation is neither plainly erroneous nor inconsistent with the text of the regulation.

Although there are alternate interpretations of the regulations, including Zurich's above interpretation, this court owes substantial deference to the EPA's reading of its own regulations. The EPA has clearly stated that the regulations preclude rescission in this instance, and this court will defer to that interpretation. Therefore, we reverse the decision of the district court and remand.

---

**23.** *See Botosan v. Paul McNally Realty,* 216 F.3d 827, 832 (9th Cir.2000) ("The incorporation of one statutory provision to the exclusion of another must be presumed intentional under the statutory canon of *expressio unius.*"); *see also United States v. Bates,* 429 F.2d 557, 559 (9th Cir.1970) (holding that when two statutes deal with the same issue, if a conflict exists between the statutes, then the more specific statute must prevail).

**24.** The EPA further points to comparable cases involving mandatory third-party liability auto insurance, where courts have interpreted "cancellation" to include "rescission." *See, e.g., Van Horn v. Atl. Mut. Ins. Co.,* 334 Md. 669, 641 A.2d 195, 203 n. 6 (1994); *Metro. Prop. & Liab. Ins. Co. v. Ins. Comm'r,* 517 Pa. 218, 535 A.2d 588, 594 (1987); *Teeter v. Allstate Ins. Co.,* 9 A.D.2d 176, 192 N.Y.S.2d 610, 616 (N.Y.App.Div.1959).

**25.** *See United States v. Mead Corp.,* 533 U.S. 218, 227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (stating that when Congress expressly delegates regulatory authority to an agency, "any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute"); 42 U.S.C. § 6991b(d)(1) (expressly authorizing the EPA to specify contractual terms that are necessary or unacceptable in establishing evidence of financial responsibility).

**26.** *See Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (stating that an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation" (internal quotation marks omitted)).

**27.** *See id.* at 462, 117 S.Ct. 905 (holding that an agency's position set forth in a legal brief, in a case in which the agency is not a party, is entitled to deference).

1138

## IV. CONCLUSION

We accept the EPA's interpretation of its UST regulations and vacate the district court's grant of summary judgment on the ground of rescission. Our holding does not prevent Zurich or others from seeking contract or tort damages from Whittier if warranted. Because the district court held that the policy was void *ab initio*, it did not reach any issues regarding the existent policy. All remaining issues, including consideration of Zurich's remaining arguments in favor of summary judgment and questions of interpretation and application of the policy, are therefore remanded to the district court for further consideration.

REVERSED and REMANDED.