PER CURIAM.
 

 This action arises out of two Pollution Liability and Environmental Damage insurance policies issued by Mid-Continent Casualty Company (MCC) and Great American Insurance Company (GAIC). The policies were intended to provide coverage to First Coast Energy, L.L.P. (FCE), for clean-up costs and third-party liability associated with underground petroleum storage tanks (USTs) as required by law.
 
 See
 
 42 U.S.C. § 6991b(d), 40 C.F.R. Part 280, § 376.309, Fla. Stat. (2003), and rule 62-761.400(3), F.A.C.
 

 After coverage was denied, FCE filed a complaint seeking a declaratory judgment that its demand for clean-up costs for certain environmental damage was covered under the policies. FCE also sought damages for breach of contract along with attorney’s fees and costs. The trial court ultimately found that GAIC was liable for environmental clean-up costs incurred by FCE, and, if GAIC was not liable, FCE would be entitled to a judgment against MCC for the same clean-up costs.
 

 On appeal, MCC and GAIC raise several issues, many of which challenge factual findings by the trial court that are supported by competent substantial evidence in the record. The only issue on appeal that merits discussion is the argument that the trial court erred in holding GAIC liable when FCE’s claim was made outside the policy period. We agree and reverse the trial court’s finding of liability as to GAIC. We otherwise affirm.
 

 MCC is a subsidiary of GAIC, but the two are separately regulated in Florida. In March 2002, FCE applied for an insurance policy with MCC. Because MCC’s rate approval in Florida was pending at the time, a policy was issued on GAIC paper (hereinafter Policy I). The policy period for Policy I was April 2, 2002, to April 2, 2003. On March 26, 2003, FCE applied to MCC for a “renewal” policy (hereinafter Policy II). MCC issued Policy II, which had a policy period of April 2, 2003, to April 2, 2004, on MCC paper. It is undisputed that Policies I and II contain virtually identical terms as well as the same retroactive date of January 1, 1989.
 

 On April 9, 2003, FCE filed a claim for coverage concerning a release from its UST which occurred subsequent to the retroactive date. It is undisputed that FCE’s claim was filed after Policy I expired by its terms on April 3, 2003. However, the trial court found that coverage still existed under Policy I because GAIC failed to provide FCE with written notice of non-renewal as required by 40 C.F.R. section 280.97. The trial court further found that, even if Policy II could be construed as a notice of non-renewal, FCE’s claim was made prior to the expiration of the 60-day time limit set forth in 40 C.F.R. section 280.97. Because we believe the trial court misapplied 40 C.F.R. section 280.97 to extend Policy I’s coverage period, we reverse the finding of liability as to GAIC.
 

 As required by federal law, the language of 40 C.F.R. section 280.97 was incorporated into the policies
 
 sub judice.
 
 Of relevance here is the language found in 40 C.F.R. section 280.97(b)(2)(2.)(d.), which provides that “cancellation or any other termination” of the insurance is effective only upon written notice and only after the expiration of 60 days after written notice is received by the insured. Termination or cancellation in this context is defined as “only those changes that could result in a gap in coverage as where the insured has not obtained substitute coverage or has
 
 *901
 
 obtained substitute coverage with a different retroactive date.”
 
 See
 
 40 C.F.R. § 280.92;
 
 Zurich Am. Ins. Co. v. Whittier Props., Inc.,
 
 356 F.3d 1132, 1135 (9th Cir. 2004). The purpose of this provision was to protect an insured from sudden gaps in coverage and allow the insured to obtain new coverage following an insurer’s involuntary cancellation or termination of the policy.
 
 See Federated Mut. Ins. Co. v. Germany,
 
 712 So.2d 1245, 1248 (Fla. 5th DCA 1998) (refusing to apply 60-day delay in effective date of cancellation where insured sent notice of cancellation to the insurer, who then cancelled the policy at the insured’s request). Thus, we read this provision to apply where there is an affirmative act of cancellation or termination by the insurer. We do not read the provision to apply where an insured allows the policy to expire of its own terms, as was the case here.
 

 The Environmental Protection Agency’s ultimate purpose of preventing “gaps” in coverage is further underscored upon examination of 40 C.F.R. section 280.97(b)(2)(2.)(e.), which provides for a six-month extended reporting period after the effective date of cancellation or non-renewal of a policy
 
 except
 
 where the new or renewed policy has the same retroactive date as the prior policy. In other words, an extended reporting period would be of no benefit where the subsequent policy provides the same coverage as that provided by the extended reporting period.
 
 See also
 
 54 Fed.Reg. 47,077-02 (Nov. 9, 1989) (codified at 40 C.F.R. § 280.97(b)(l, 2)).
 

 In the instant case, the parties do not dispute that the six-month extended reporting period does not apply because Policy II contains the same retroactive date as Policy I. In light of the inapplicability of the six-month extended reporting period, the trial court’s application of 40 C.F.R. section 280.97(b)(2)(2.)(d.) effectively served to create a 60-day extended reporting period under Policy I. We find that this application was contrary to the intent and purpose of the federal regulations and not necessary in the instant case where Policy II contained the same retroactive date as Policy I. Because the trial court erred as a matter of law in applying 40 C.F.R. section 280.97 to extend coverage under Policy I, we reverse the trial court’s finding of liability as to GAIC. We otherwise affirm the trial court’s finding of liability as to MCC.
 

 AFFIRMED in part, REVERSED in part.
 

 BENTON, C.J., ROBERTS and RAY, JJ., concur.