## MATTER OF RODRIGUEZ-MAJANO

### In Deportation Proceedings

### A-26024512

*Decided by Board September 28, 1988*

(1) An alien who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion is barred from the relief of withholding of deportation pursuant to the provisions of section 243(h)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h)(2)(A) (1982), and from asylum pursuant to the provisions of section 101(a)(42)(B) of the Act, 8 U.S.C. § 1101(a)(42)(B) (1982).

(2) The participation or assistance of an alien in persecution need not be of his own volition to bar him from the relief of withholding of deportation and asylum.

(3) While membership in an organization, even one which engages in persecution, is not sufficient to bar one from the relief of withholding of deportation and asylum, if an alien's action or inaction furthers persecution in some way, he would be ineligible for relief.

(4) Activity related to a civil war or harm which may result from behavior directed toward the overthrow of a government or, alternatively, the defense of that government against an opponent, is not persecution unless it can be established that there is some degree of intent on the part of the persecutor to produce the harm that the applicant fears in order that the persecutor may overcome a belief or characteristic of the applicant.

(5) Regardless of whether the respondent aided the guerrillas voluntarily or not, the only harm or injury he may have inflicted arose as the natural consequence of civil strife and the harm resulting from such generalized civil strife is not persecution.

ON BEHALF OF RESPONDENT:
Peter M. Upton, Esquire
American Friends Service Committee
1205 Sunset Drive
South Miami, Florida 33143

ON BEHALF OF SERVICE:
David M. Dixon
Appellate Counsel
Margaret Phillbin
General Attorney

CHARGE:
Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspection

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

On March 12, 1986, the immigration judge found the respondent deportable as charged and denied his applications for asylum and for withholding of deportation to El Salvador under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1253(h) (1982).[1] The respondent has appealed from that decision. Oral argument was held August 18, 1987. The record will be remanded.

The respondent is a 23-year-old native and citizen of El Salvador who admitted that he entered the United States without having been inspected on May 18, 1984, and who has conceded deportability. Accordingly, his deportability is established by clear, unequivocal, and convincing evidence. See Woodby v. INS, 385 U.S. 276 (1966). The only issue on appeal is the respondent's eligibility for asylum and withholding of deportation. The immigration judge found that the respondent was ineligible for both forms of relief because he had engaged in the persecution of others. To be eligible for asylum, an applicant must demonstrate that he is a refugee within the meaning of the Act. The immigration judge found that the respondent was excluded from the definition of refugee under section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42) (1982), and therefore was not eligible for asylum. He also found that the respondent was ineligible for the relief of withholding of deportation under section 243(h)(2)(A) of the Act for having participated in the persecution of others. See Matter of McMullen, 19 I&N Dec. 90 BIA 1984), aff'd on other grounds, McMullen v. INS, 788 F.2d 591 (9th Cir. 1986). The respondent contends that his activities did not constitute persecution or assistance in persecution and that the record should be remanded to the immigration judge for a determination of his eligibility for relief.

In addition to his testimony in support of his applications, the respondent submitted his Request for Asylum in the United States (Form I-589) and background information on El Salvador consisting of newspaper articles from the Miami Herald, the New York Times, the Los Angeles Times, the Washington Post, In These Times, Time, the Christian Science Monitor, the Boston Sunday Globe, the Wall Street Journal, and the National Catholic Register; testimony of Steward A. Baker before the House Foreign Affairs Committee; a transcript of testimony before the United States District Court for the Central District of California; an Amnesty Inter-

---

[1] No decision was made regarding the application for voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e) (1982), but the immigration judge ordered the respondent deported.

national statement; and Americas Watch reports dated March 1985, September 1985, and December 1985.

The Act provides that "[t]he term 'refugee' does not include any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 101(a)(42)(B) of the Act, 8 U.S.C. § 1101(a)(42)(B) (1982). The statute also provides that withholding of deportation

shall not apply to any alien if the Attorney General determines that——

(A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion.

Section 243(h)(2)(A) of the Act, 8 U.S.C. § 1253(h)(2)(A) (1982).

The respondent testified that he worked for his father, a cattle businessman, in 1983 in San Miguel, El Salvador. He drove a truck from San Miguel to his father's store in Santa Inez a short distance away. He reported that he was stopped many times by guerrillas on the road. They demanded that he carry merchandise for them in order to be allowed to pass. In this way he became acquainted with the guerrillas in his area. At about this same time, the respondent's uncle and his cousin were kidnapped from their homes in San Miguel by armed men and were killed along with five other men in the town. It was reported they were killed by army security forces because they were guerrillas.

The respondent stated that he was seized in May 1983 by the police and questioned about collaborating with the guerrillas. The chief of police released him because he knew the respondent's father, but he told the respondent to report to the police on the guerrillas' whereabouts. In June 1983, the guerrillas commandeered the respondent and several of his father's trucks, and he drove supplies to San Miguel for a battle with the government forces which lasted a day and a half. He also transported the guerrillas out of the city. The respondent was stopped at a roadblock on his return and was questioned about his activities by the military. He admitted to them he had been forced to help the guerrillas. He was released, but he was threatened with death if he helped the guerrillas again. In September, the respondent was taken from his home by the guerrillas, who had acquired a new leader. He alleges he was forced to join them. He was taken to their training camp where he was given military training. He accompanied guerrillas on propaganda trips and once covered them with his weapon while they burned cars.

The respondent reported that he deserted the guerrillas after 2 months. Before he could turn himself over to the military, he was

arrested by the police in San Miguel and beaten. He admitted to them that he had been with the guerrillas. He was transferred after a week to the Central Police Station in San Salvador where he alleges he was interrogated, beaten, and tortured with electric shocks. He was then transferred to a maximum security facility, La Mariona, after about 9 days. He remained there while his case came before a military court of investigation. He appeared before the court twice. About 2 and ½ months after he entered La Mariona he was cleared of charges and released. A directive to the director of the central penitentiary ordering his release is included in the record. The respondent understood that he was released through his lawyer's influence with the judge. He stated that the judge and his lawyer warned him to leave the country. The respondent left El Salvador within 2 months. The respondent said he fears the Government would persecute him for his involvement with the guerrillas and that the guerrillas would persecute him for deserting them.

The respondent argues in his brief and at oral argument that the immigration judge incorrectly found that the respondent had engaged in the persecution of others, rendering him ineligible for asylum and prohibiting from obtaining withholding of deportation. According to the respondent, the immigration judge failed to apply the proper criteria to establish persecution and the immigration judge failed to consider the circumstances under which the alleged persecution took place. In particular, the respondent argues that, where there is open combat, acts of warfare taken in furtherance of political goals are not persecutory acts. Further, the respondent argues that he was never an established member of the guerrilla organization, and therefore cannot be held accountable for the actions of the organization. The Service agreed at oral argument that the respondent's actions do not constitute participation in persecution so as to disqualify him from relief. However, the Service argued that the immigration judge, in effect, found that the respondent lacked credibility;[2] thus, the respondent's testimony is not sufficient to establish his case and the appeal should be dismissed.

The participation or assistance of an alien in persecution need not be of his own volition to bar him from relief. *See Fedorenko* v. *United States*, 449 U.S. 490 (1981). However, mere membership in an organization, even one which engages in persecution, is not suf-

---

[2] For example, the respondent alleges that he was forcibly recruited into the guerrillas, but the immigration judge found that the background information shows forcible recruiting by the guerrillas did not begin until June 1984.

ficient to bar one from relief, but only if one's action or inaction furthers that persecution in some way. It is the objective effect of an alien's actions which is controlling. *Laipenieks v. INS*, 750 F.2d 1427, 1435 (9th Cir. 1985); *Matter of Fedorenko*, 19 I&N 57, at 69 (BIA 1984); *see also Fedorenko v. United States, supra*, at 750 n.34.

We agree with the respondent and the Service that the respondent is not ineligible for relief. We find that the immigration judge in this case gave too expansive a definition to the statutory term "persecution." The only evidence on the issue of persecution of others in this record is the respondent's own testimony and the background information submitted by the respondent. The evidence of record does not indicate that the guerrillas here referred to engaged in persecution.

The argument was made by respondent's counsel that activities directly related to a civil war are not persecution. We agree. By this statement we mean that harm which may result incidentally from behavior directed at another goal, the overthrow of a government or, alternatively, the defense of that government against an opponent, is not persecution. In analyzing a claim of persecution in the context of a civil war, one must examine the motivation of the group threatening harm. *Matter of Maldonado*, 19 I&N Dec. 509 (BIA 1988). A finding of persecution requires some degree of intent on the part of the persecutor to produce the harm that the applicant fears in order that the persecutor may overcome a belief or characteristic of the applicant. *See Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985), *modified, Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). Thus, the drafting of youths as soldiers, the unofficial recruiting of soldiers by force, the disciplining of members of a rebel group, or the prosecution of draft dodgers are necessary means of achieving a political goal, but they are not forms of persecution directed at someone on account of one of the five categories enumerated in section 101(a)(42)(A) of the Act. *See e.g., Rodriguez-Rivera v. United States, INS*, 848 F.2d 998 (9th Cir. 1988); *Kaveh-Haghigy v. INS*, 783 F.2d 1321, 1323 (9th Cir. 1986); *Sarkis v. Sava*, 599 F. Supp. 724 (E.D.N.Y. 1984); *Matter of Fuentes*, 19 I&N Dec. 658 (BIA 1988); *Matter of Vigil*, 19 I&N Dec. 572 (BIA 1988); *Matter of Maldonado, supra; Matter of A–G–*, 19 I&N Dec. 502 (BIA 1987). We would include in this list the engaging in military actions, the attacking of garrisons, the burning of cars, and the destruction of other property as actions outside the limits of the term "persecution."

The evidence suggests that the respondent engaged only in military activities of a type normal in such conflicts. The military action in San Miguel in which the respondent took an indirect part

is a typical example of military tactics designed to overthrow the government which the guerrillas oppose. As such, it cannot be said to constitute persecution. The other activities in which the respondent participated, such as burning cars, are also actions typically within the nature of civil wars. Of course, the respondent must have been aware that the guerrillas engaged in forcible recruiting, as he alleges he was a victim of this practice. We have already determined that forcible recruiting by dissident groups engaged in a civil war is not persecution because it is not motivated by a desire to harm one the guerrillas find offensive or who has characteristics they wish to overcome. *Matter of Fuentes, supra; Matter of Vigil, supra; Matter of Maldonado, supra; see also Matter of McMullen, supra,* at 95 (BIA 1984). *But see Arteaga* v. *INS,* 836 F.2d 1227 (9th Cir. 1988). Therefore, it is not shown by the record that the respondent engaged in or assisted in any persecution by the guerrillas on account of nationality, race, religion, social group, or political opinion.

Were we to hold that practices such as attacking military bases, destroying property, or forcible recruiting constitute persecution, members of armed opposition groups throughout the world would be barred from seeking haven in this country. As the concept of what constitutes persecution expands, the group which is barred from seeking haven in this country also expands, so that eventually all resistance fighters would be excluded from relief. We do not believe Congress intended to restrict asylum and withholding only to those who had taken no part in armed conflict. Regardless of whether the respondent aided the guerrillas voluntarily or not, the only harm or injury he may have inflicted arose as the natural consequence of civil strife. Harm resulting from generalized civil strife is not persecution. *Martinez-Romero* v. *INS,* 692 F.2d 595 (9th Cir. 1982); *Matter of Sanchez and Escobar,* 19 I&N Dec. 276 (BIA 1985); *Matter of Acosta, supra,* at 222. Thus, those who inflict such harm are not engaging in persecution.

Because the immigration judge did not determine whether the respondent had demonstrated either a clear probability or a well-founded fear of persecution in El Salvador, the record must be remanded for consideration of these issues.

Accordingly, the record will be remanded to the immigration judge.

**ORDER:** The immigration judge's decision is vacated and the record is remanded to the immigration judge for the entry of a new decision.