Predrag **VUKMIROVIC**, Petitioner,

v.

John **ASHCROFT**, Attorney General, Respondent.

No. 02–72110.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 2004.

Filed April 5, 2004.

---

Louis A. Gordon and David Gardner; Los Angeles, CA; D. Jade Mundel, Law Offices of Marks & Acalin, LLP, Los Angeles, CA; attorneys for the petitioner.

Ann Carroll Varnon, Deborah N. Misir, Linda Wedtland, Robert D. McCallum; Office of Immigration Litigation; Department of Justice; Washington, D.C.; attorneys for the respondent.

Before: FERNANDEZ, HAWKINS and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Vukmirovic petitions for review from the denial of his application for asylum and withholding of removal, his motion to reopen due to ineffective assistance of counsel, and his motion to reopen for relief under the Convention Against Torture. We grant the petition for review.

I

Predrag Vukmirovic is a Bosnian Serb from Bosnia–Herzegovina. In 1990, before the war in former Yugoslavia broke out on a full scale, Vukmirovic joined a chekne in Serbia, which he describes as an anti-communist group committed to the tenets of the Serbian Orthodox religion formed to defend his Serbian town against attacks. His father and grandfather had been members of the chekne when it was defending the region from fascist attacks during World War II. His grandparents were killed fighting German troops during this period.

The purpose of the chekne when Vukmirovic was a member was to defend his town from Bosnian Croats. His town was located near Croatian communities, one of which was just across a bridge. Vukmirovic testified that Croats would often come to his town to commit violent acts against the Serbs, including shooting. When they entered Vukmirovic's town, members of the chekne would defend the town. Some of the skirmishes resulted in deaths. Vukmirovic admitted to physically harming the attacking Croats, beating them with sticks and pistols. He admitted to breaking the "nose and foreheads" of Croats during the fights. He was unarmed during these fights, except for knives and sticks. He testified that he did not participate in the ethnic cleansing campaign launched by the Bosnian Serbs against the Muslims, which occurred after he left Bosnia–Herzegovina in 1991.

After leaving the country, Vukmirovic made his way to the United States as an employee on a cruise ship. Upon arrival in the United States, he overstayed his permission to enter America as a crewmember on a cruise ship for one day. He resided in Florida from 1991 until 1994, when he moved to Tiburon, California, and began working at a restaurant. He married a United States citizen in February, 1996.

Vukmirovic was issued an order to show cause and notice of deportation hearing on January 2, 1996. At his initial appearance, he conceded deportability, but indicated he would be applying for an adjustment of status based on his marital status. At a subsequent hearing before the immigration judge ("IJ"), the IJ denied Vukmirovic's motion for a continuance to allow the Immigration and Naturalization Service to rule on his petition for adjustment of status. The IJ commenced the hearing by conducting the examination of Vukmirovic himself; it was only after the IJ concluded his questioning that he allowed Vukmirovic's counsel to begin presenting his case. Even after Vukmirovic began presenting his case, the IJ frequently interrupted to ask a series of questions. At the end of the day, the hearing was continued.

When the hearing resumed several months later, Vukmirovic again moved for a continuance to allow the INS to process his petition for adjustment of status. The motion was denied. The IJ then indicated that he would be ruling against Vukmirovic, stating:

Mr. Vukmirovic, I'm going to have to proceed with the case. I'm going to have to deny your application for asylum. I'm going to deny your request for voluntary departure, because the Service object[s] to that. And I will indicate to you the reasons why. And I will have to order you deported.

I want to explain to you why, because I reviewed your application and I heard— which I found to be credible. But the solution to your problem is not with this Court. And while making that decision I'm not making a personal decision on you personally, you are a Bosnian Serbian. . . . And you came from a part of the world that since the dismantlement of the Soviet Union block that followed later on by what happened in what we know as former Yugoslavia, and the ethnic conflicts between the Croatians, the Serbians, the Muslim and so on, I think that beyond any individual's control, I— my decision is not condemnation, a personal condemnation, I found your testimony to be credible and I found you to be actually courageous in testifying frankly and honestly. My hands are tied, however, because as a person who participated in the persecution of others you are precluded from claiming refugee status, all right, and I cannot grant you refugee status or deny you refugee status and allow you time to leave the country in order to come back with the—assuming later on your visa petition is approved. Okay. Is there anything else you want to tell me before I issue my decision?

Vukmirovic then briefly testified that he had friends who were Bosnian Croats and Bosnian Muslims, and that he never hurt anybody simply because they were a Croat or a Muslim. Vukmirovic's wife then testified briefly, to which the IJ responded that it appeared to him that the visa petition was bona fide, and that the marriage was bona fide, but that he would be proceeding with the deportation. Vukmirovic subsequently filed a motion to reopen under the Convention Against Torture and on the basis of ineffective assistance of counsel.

A written decision followed some months later addressing both the asylum application and the motion to reopen. As to the asylum claim, the decision held in relevant part that:

[T]he Respondent testified that he frequently engaged the Croats in violence because of their race and religion. The Respondent's violent retaliations against the Croats amount to a threat against their lives. These clashes resulted in killings and severe bodily harm. The Respondent admits to "breaking the foreheads" of Croats. The Respondent testified that "most" of the clashes occurred when the Croats attacked, but the use of the word "most" leads the court to believe that the Respondent also attacked the Croats. Even though some of these action [sic] occurred in self-defense, there is no provision under the law that exempts acts of self-defense from qualifying as persecution since the state of mind of the individual is irrelevant. *Fedorenko*, 19 I & N Dec. 57, 69 (BIA 1984). The objective effect of the Respondent's actions was to hurt and sometimes kill the Croats. These skirmishes and their motivations qualify as persecution under the law.

The IJ then concluded that Vukmirovic had "engaged in persecution of others on the basis of race and religion" and was thus "barred from receiving asylum under section 101(A)(42)(B) of the Act." The IJ

denied the motion to reopen because Vukmirovic had not complied with *Matter of Lozada,* but did not address the relief Vukmirovic sought under the Convention Against Torture. The Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision under streamlining regulations. 8 C.F.R. § 1003.1(a)(7).

Vukmirovic petitions us for review from the BIA's summary affirmance of the IJ's denial of his application for asylum and withholding of removal. He challenges the BIA's streamlining process as a violation of due process and on the basis that streamlining was inappropriate under the regulations in this case. He also challenges the merits of the IJ's decision on his asylum application and the decision denying his motion to reopen.

Because removal proceedings against Vukmirovic were pending before April 1997, and the BIA issued its final decision after October 1996, we apply the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009. *Kalaw v. INS,* 133 F.3d 1147, 1150 (9th Cir.1997). We therefore have jurisdiction over the asylum claim under 8 U.S.C. § 1105a. Under IIRIRA's transitional rules, we have jurisdiction to consider Vukmirovic's challenges to the denial of his motion to reopen. *Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1223 (9th Cir.2002).

■■■ Because the BIA adopted the decision of the IJ as the final agency determination of the case, we review the IJ's decision. *See Falcon Carriche v. Ashcroft,* 350 F.3d 845, 851(9th Cir.2003); *Alaelua v. INS,* 45 F.3d 1379, 1381–82 (9th Cir.1995). We review the decision for "substantial evidence." *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The agency's decision that an applicant is ineligible for asylum can only be reversed where "a reasonable fact-finder would have to conclude that the requi-

site fear of persecution existed." *Nagoulko v. INS,* 333 F.3d 1012, 1015 (9th Cir. 2003) (quoting *Chand v. INS,* 222 F.3d 1066, 1073 (9th Cir.2000)). However, we must grant a petition for review and, in an appropriate case, remand a case for further consideration when the denial of asylum was based on an error of law. *Kotasz v. INS,* 31 F.3d 847, 851 (9th Cir.1994). We accept the petitioner's testimony as true when, as here, the IJ found him to be credible. *Halaim v. INS,* 358 F.3d 1128, 1131 (9th Cir.2004).

## II

At issue in this case is the interpretation of the statutory persecutor exception to asylum eligibility. That subsection provides:

> The term "refugee" does not include any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42). If a person qualifies as a "persecutor" under this section, he or she is also barred from withholding of removal relief. 8 U.S.C. § 1231(b)(3)(B).

Although we have not considered this provision previously, we have interpreted a similar provision, 8 U.S.C. § 1251(a)(19), that provided for deportation of individuals who assisted in persecution of any person because of race, religion, national origin, or political opinion while under the direction of the Nazi government of Germany or its affiliates. *See Laipenieks v. INS,* 750 F.2d 1427, 1429 (9th Cir.1985). In *Laipenieks,* we relied upon the Supreme Court's decision in *Fedorenko v. United States,* 449 U.S. 490, 495, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981), for guidance in interpreting the contours of this exception. Other Circuits have also relied upon *Fedorenko* for in-

terpretative guidance on provisions of the Immigration and Naturalization Act pertaining to persecution of others. *See, e.g., Hernandez v. Reno,* 258 F.3d 806, 811–12 (8th Cir.2001).

In relevant part, *Fedorenko* stated:

[A]n individual who did no more than cut the hair of female inmates before they were executed cannot be found to have assisted in the persecution of civilians. On the other hand, there can be no question that a guard who was issued a uniform and armed with a rifle and a pistol, who was paid a stipend and was regularly allowed to leave the concentration camp to visit a nearby village, and who admitted to shooting at escaping inmates on orders from the commandant of the camp, fits within the statutory language about persons who assisted in the persecution of civilians. Other cases may present more difficult line-drawing problems but we need decide only this case.

449 U.S. at 512 n. 34, 101 S.Ct. 737.

In *Laipenieks,* we held that the language, "ordered, incited, assisted or otherwise participated in the persecution of any person," requires that the act of participation "involve some personal activity involving persecution." 750 F.2d at 1431 (internal quotation marks omitted). "Mere acquiescence or membership in an organization is insufficient to trigger the deportability provision.... [A]ctive personal involvement in persecutorial acts needs to be demonstrated before deportability may be established." *Id.*

■■ Given this, the IJ made two errors of law in analyzing Vukmirovic's asylum claim. First, to the extent that the IJ denied asylum based on the imputed actions of Bosnian Serbs who engaged in persecution of others, the IJ erred. In construing a similar provision, *Laipenieks* clearly held that individual accountability must be established. In analyzing this

provision, we agree with the Eighth Circuit, that courts "should engage in a particularized evaluation in order to determine whether an individual's behavior was culpable to such a degree that he could be fairly deemed to have assisted or participated in persecution." *Hernandez,* 258 F.3d at 813. Without such an individualized assessment, qualified asylum applicants could be denied relief purely on grounds that the immigration statutes were designed to avoid—bias based on ethnicity or national origin. In this case, the record reflects that the reprehensible "ethnic cleansing" to which the IJ referred occurred after Vukmirovic left Bosnia.

■ Second, the IJ erred by holding as a matter of law that "there is no provision under the law that exempts acts of self-defense from qualifying as persecution." This construction of the statute is untenable on its face. As a textual matter, holding that acts of true self-defense qualify as persecution would run afoul of the "on account of" requirement in the provision. It would also be contrary to the purpose of the statute. It would deny asylum to any victim of oppression who had the temerity to resist persecution by fighting back. The right of self-defense is one of the most ancient in Anglo–American law. As the English poet John Dryden observed, "[S]elf-defense is nature's eldest law." Dryden, *Absalom and Achitophel,* I (1682). William Blackstone described self-defense as one of the "absolute rights of the individual." 1 William Blackstone, Commentaries *126. In another context, the BIA has also quite appropriately referred to "self-defense and self-preservation" as some "of the most elemental characteristics of the human species." In the *Matter of E——,* 2 I. & N. Dec. 134, 165 (BIA 1944).

Such a construction would also preclude entire classes of legitimate asylum seekers

from safe harbor, notably those involved in civil strife. As the BIA itself noted in *In re Rodriguez–Majano*, 19 I. & N. Dec. 811 (BIA 1988), under such an expansive interpretation, "members of armed opposition groups throughout the world would be barred from seeking haven in this country." *Id.* at 816.

In short, the IJ erred as a matter of law in determining categorically that acts of self-defense constitute persecution under the statute. The error was not harmless. In this case, there was no affirmative evidence in the record showing that Vukmirovic had participated in physical attacks other than in the context of self-defense. Rather, the IJ inferred that Vukmirovic had participated in unprovoked attacks on Croats on their soil based on Vukmirovic's ambiguous statement that "most" of the Croatian attacks occurred in his town. He did not elaborate as to whether the Croats had attacked elsewhere, or whether he had participated in unprovoked attacks on Croats. Thus, the only affirmative evidence in the record is that Vukmirovic acted in self-defense. However, the ultimate determination is not ours to make in the first instance. A remand is required so that the IJ may conduct a new hearing and make his determination applying the proper legal analysis.

### III

The IJ also erred in denying the motion to reopen. The IJ neglected to address Vukmirovic's motion to reopen for relief under the Convention Against Torture, despite ordering him deported. Although the petitioner would be ineligible for withholding of removal under the Convention Against Torture if found to be a persecutor, he might still be eligible for deferral of removal, 8 C.F.R. § 208.17. The IJ abused his discretion in not addressing the motion to reopen, *Yepes–Prado v. INS*, 10 F.3d 1363, 1366 (9th Cir.1993), and "we cannot assume that the [agency] consid-ered factors that it failed to mention," *id.* Given this, we need not address Vukmirovic's contention that the IJ improperly rejected Vukmirovic's ineffective assistance of counsel claims.

### IV

Vukmirovic challenges the BIA's summary affirmance under 8 C.F.R. § 1003.1(a)(7) as a violation of due process, as well as a violation of the BIA's own regulations governing streamlining. The due process challenge to streamlining is foreclosed by *Falcon Carriche*, 350 F.3d at 852. Contrary to the government's assertion, we have jurisdiction over Vukmirovic's regulatory challenge to streamlining in his case under *Falcon Carriche*, 350 F.3d at 852–53 ("Although we agree with the government's ultimate conclusion, we do not embrace the government's argument that the streamlining decision is inherently discretionary. Indeed, portions of the streamlining decision are non-discretionary determinations that we would ordinarily have jurisdiction to review."). *Falcon Carriche* rejected the argument made by the government that streamlining is beyond judicial review under *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), and section 701 of the Administrative Procedure Act, which precludes judicial review of agency action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). However, we need not reach the question of whether the regulations were violated in this case because it is moot, as we are granting the petition for review.

### V

For these reasons, we grant the petition for review and remand for further proceedings consistent with this opinion.

PETITION GRANTED AND RE-MANDED.