**Dani MIHAJ, Petitioner,**

v.

**John D. ASHCROFT, Attorney General of the United States, Respondent.**

**No. 03–3021.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 2004.

Decided Nov. 8, 2004.

---

Before BAUER, COFFEY, and EVANS, Circuit Judges.

## ORDER

Dani Mihaj is an Albanian citizen who sought asylum, withholding of removal, and relief under the Convention Against Torture, claiming that he had been persecuted on account of his political opinion. An Immigration Judge denied relief and ordered his removal, and the Board of Immigration Appeals summarily affirmed, adopting the IJ's opinion as its own. The IJ's decision turns entirely on his rejection of Mihaj's testimony as not credible. In this petition for review, however, Mihaj leaves that determination almost unchallenged. Due to the deferential standard with which we review an IJ's credibility determinations, we deny the petition for review.

Mihaj, who is 32, testified at his hearing before the IJ that he fled from Albania to Greece. Then he flew from Athens to Paris to Montreal and finally to Toronto, where he took a bus to Detroit. He traveled on a fake Italian passport with his picture and someone else's name, though he also carried an Albanian passport. There is no record of his entry into the United States because he paid people to get into the country. Mihaj testified that he did not think that he could apply for asylum in Greece, and that he did not apply in Canada because he always wanted to go to the United States. He applied for asylum about four months after his arrival in this country.

Mihaj testified that he had belonged to the Democratic Party of Albania since 1993 and that he had served as poll-watcher for the Democratic Party in the village of Novosele, Albania, during a 1998 constitutional referendum. He asserts that during the referendum he witnessed seven or eight instances of voter intimidation, a beating, and at least 20 cases of multiple voting, all linked to the Socialist Party. Mihaj explained that he was the only one out of five poll-watchers, each representing different parties, who refused to certify the vote. After the vote, Mihaj continued, he and 20 other Democrats reported intimidation and fraud to the Secretary of the Democratic Party, and the Democratic Party sued the Socialist Party.

According to Mihaj, a prosecutor from the ruling Socialist Party was put in charge of the case, and Mihaj was desig-

nated a material witness. Mihaj told the IJ that the prosecutor "pressured" him not to testify by warning him that doing so would be "very difficult" and suggesting that he "think twice about it." About a week later, said Mihaj, he was coming home after dark when two unidentified men hit him in the back of the head, took him to a warehouse, beat him, and threatened to kill him if he testified against the Socialist Party. He showed the IJ scars purportedly from the attack. Mihaj asserted that he went to the hospital after the attack and stayed overnight. He testified that he went to the police station, but that the police would not make a report. He also noted in his asylum application that he filed a police report, but at the hearing he did not explain what happened with that report except that things "looked pretty complicated since the motive of the attack was political." According to Mihaj's testimony, within a few months of the attack, his parents were kidnapped, and the unknown kidnappers left a note demanding that Mihaj go to the prosecutor to retract his allegations. Mihaj went to the prosecutor's office, changed his story, and executed an affidavit denying that there had been voter fraud. The prosecutor acted surprised, said Mihaj, and told him that he did not have to make the affidavit but could if he wanted to. Mihaj's parents were released.

Nonetheless, Mihaj says that he experienced a change of heart when the lawsuit came to trial, and he recanted his affidavit on the witness stand. He told the Albanian judge that he had signed it only because his parents had been kidnapped. Mihaj explained that his parents denied the kidnapping when they were called as witnesses because, Mihaj opined, they were afraid of the Socialist judge. The Democratic Party sent 20 other witnesses to trial, but supposedly 10 did not testify because of intimidation. Mihaj says he

was arrested, prosecuted, and convicted for perjury, and served six months in prison. He testified that after his release he told his parents to go to Greece so that they would be safe and then filed suit against the prosecutor's office. He also testified that he had no lawyer in that lawsuit because they were all afraid to represent him, and that he did not ask for help from the Democratic Party's lawyers because he was ashamed of falsely denying the voting irregularities in his affidavit. The prosecutor's office counter-sued under Albania's criminal law for an offense that Mihaj did not understand. When he was summoned for a court appearance, he fled Albania. Mihaj wrote in his asylum application, but did not testify on the stand, that before he fled he was beaten (though he does not say by whom) and that the prosecutor warned him to withdraw his suit. Additionally, Mihaj said that a friend in Greece later told him that his house had been destroyed four days before Mihaj was scheduled to appear at trial in the suit against the prosecutor. Mihaj speculated that the secret service working for the prosecutor probably destroyed his house. His parents returned to Albania about two months before his asylum hearing before the IJ. Mihaj testified that he was afraid he might be killed or jailed if he returned.

The IJ denied Mihaj's requests for asylum, withholding of removal, and relief under the Convention Against Torture in an oral opinion. The IJ did not decide whether Mihaj's entire testimony, if taken as true, established past persecution. Instead, the IJ's decision was based on his conclusion that Mihaj's testimony was incredible because it was "internally inconsistent and internally contradictory." The IJ gave a laundry list of reasons why he did not think Mihaj was credible. For example, the IJ found Mihaj's account of the election day to be implausible because

he could not provide a consistent account of his activities. Also, the IJ was incredulous about Mihaj's statements that the Socialists were targeting only the Democratic Party members, whom the IJ found were boycotting the election, rather than the members of the other parties, none of whom were troubled by any infractions. Mihaj's account also conflicted with country reports that Mihaj himself submitted about the very same referendum. Additionally, the IJ doubted Mihaj's account of the events concerning the prosecutor and how he was threatened "inferentially." Chiefly, the IJ decided that Mihaj's account of his decision to file suit against the prosecutor after he got out of jail for perjury to be "inconsistent with the whole tenor of his presentation before the Court." Among other things the IJ was also troubled by Mihaj's testimony that he never hired a lawyer, either before filing suit or before going to see the prosecutor in the first place. When asked, Mihaj said that he never asked for a lawyer and that the lawyers were all afraid to help him; he could not explain why he did not ask the Democratic Party for help before going to the prosecutor's office for the first time, even though he was a material witness in the suit (although he did claim that, when he sued after getting out of jail, he was ashamed to ask for help). Having found that Mihaj's testimony was internally inconsistent, the IJ also found that Mihaj had not presented reliable corroborating evidence or explanation to meet his burden of showing eligibility for asylum. Because Mihaj did not satisfy the lesser burden for asylum, the IJ denied withholding of removal and relief under the Convention Against Torture.

On appeal the BIA affirmed, adopting the IJ's opinion as its own. When the BIA affirms the IJ's opinion under its streamlined procedures, the IJ's opinion becomes the BIA's for purposes of judicial review.

*See Georgis v. Ashcroft*, 328 F.3d 962, 966–67 (7th Cir.2003).

■ The essence of this case is the IJ's adverse credibility determination, yet Mihaj largely ignores the credibility determination and instead argues that the IJ should have found persecution as if his testimony was entirely truthful. Indeed, apart from a conclusory assertion that his testimony was internally consistent and repeating his own version of the facts, Mihaj specifically attacks only two aspects of the IJ's credibility determination—even construing his brief generously—arguing that the IJ: 1) unduly relied on country reports, and 2) exhibited prejudice against Albanians. Generally, arguments that a litigant fails to make are waived, *see Awe v. Ashcroft*, 324 F.3d 509, 512–13 (7th Cir. 2003), and especially given the substantial deference we pay an IJ's credibility determinations, *see Pop v. INS*, 270 F.3d 527, 530–31 (7th Cir.2001), Mihaj's failure to contest the substantial number of other reasons the IJ gave for finding him not credible requires us to uphold that determination. It does not matter that we might have arrived at a different decision; for us to overturn the IJ, the evidence must be "such that a reasonable fact finder would be compelled to reach an opposite conclusion." *Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir.2003); *see INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Loulou v. Ashcroft*, 354 F.3d 706, 709–10 (8th Cir. 2003); *Pop*, 270 F.3d at 529.

■ Mihaj's two attacks on the credibility determination fall woefully short. First, Mihaj argues that the IJ erroneously relied on a reports concluding voting infractions had no impact on the referendum and that international observers at polling stations during the referendum characterized the process as fair. Al-

though an IJ's undue reliance on country reports can be error because country reports often provide information that is too general to evaluate a specific individual's claims, *see Galina v. INS*, 213 F.3d 955, 959 (7th Cir.2000); *see also Bace v. Ashcroft*, 352 F.3d 1133, 1139 (7th Cir.2003), there is often no other evidence available, so an IJ's measured reliance on these reports is entirely reasonable. *Galina*, 213 F.3d at 958–59. More to the point, the IJ did not base his determination on those reports alone.

Second, Mihaj argues that the IJ improperly based his credibility determination on a belief that Albanians want to come to the United States because they "still believe that 'The streets are paved with gold.'" Surely an IJ cannot base a credibility determination on speculative beliefs rather than the evidence. *Uwase v. Ashcroft*, 349 F.3d 1039, 1042 (7th Cir. 2003); *see also Vukmirovic v. Ashcroft*, 362 F.3d 1247, 1253 (9th Cir.2004). But even if this isolated comment is seen as problematic, the IJ cited multiple reasons for finding Mihaj not credible, and as we have said, Mihaj has completely failed to address the IJ's other reasons. Moreover, Mihaj failed to raise his prejudice argument before the BIA, and claims of prejudice—which are procedural defects that can be corrected in the administrative process—are waived if not brought before the BIA. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 595–96 & n. 5 (3d Cir.2003); *Sanchez–Cruz v. INS*, 255 F.3d 775, 780 (9th Cir.2001).

In sum, Mihaj has failed adequately to challenge the IJ's adverse credibility determination, and he does not even address the IJ's conclusion that he never adequately explained inconsistencies in his testimony or presented reliable corroborating evidence to revive that testimony. *See Capric v. Ashcroft*, 355 F.3d 1075, 1089–91 (7thCir.2004). Therefore, we cannot conclude that the IJ lacked substantial evidence to support his conclusion that Mihaj never met his burden of establishing eligibility for asylum or withholding of removal. *See id.* Last, Mihaj's failure to argue in his opening brief that he is entitled to relief under the Convention Against Torture waives the claim. *Lin v. Ashcroft*, 385 F.3d 748 (7th Cir.2004).

For these reasons the petition for review is DENIED.