MEMORANDUM **
Andre Margo is a native-born citizen of Indonesia who is ethnically Chinese and a Christian. He claims that he has experienced past persecution, and fears future persecution, at the hands of native Indonesians who would target him on account of his race, religion, and imputed political opinion. Margo petitions for review of a decision of the Board of Immigration Appeals (“BIA”) adopting and affirming an Immigration Judge’s (“IJ”) denial of withholding of removal under 8 U.S.C. § 1231(b)(3) and relief under the Convention Against Torture (“CAT”).
A. Withholding of removal
The IJ found that Margo failed to show that he suffered past persecution on account of his race, religion, or imputed political opinion. Substantial evidence supports the IJ’s conclusion as to religion and imputed political opinion, but not as to race.
To establish past persecution, “an applicant must show: (1) an incident, or incidents, that rise to the level of persecution; (2) that is ‘on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either ‘unable or unwilling’ to control.” Navas v. INS, 217 F.3d 646, 655-56 (9th Cir.2000). The IJ’s reasoning on each of these criteria was incorrect, both in the legal standard he used and in his evaluation of the evidence in the record. We address the three criteria in reverse order.
Government inability or unwillingness: Considering the 1997 attack on Margo’s home and shrimp farm,[1] the IJ stated that “[i]t does not appear that any Indonesian officials such as a policeman or other authority was involved in the incident. Indeed, there is no evidence on this record of any official involvement in the general riots that occurred in Ujung Pandang at the time.” Similarly, when considering the second attack in 1998, the IJ stated that Margo “cannot bring forth any evidence in his testimony that there was any official involvement in the destruction of the property.” [AR48][2]
*530 Contrary to the IJ’s statements, official involvement is not a prerequisite for persecution. Rather, the petitioner must show that the “government is unable or unwilling to control” his persecutors. Reyes-Reyes v. Ashcroft, 384 F.3d 782, 788 (9th Cir.2004) (internal quotation marks' omitted). So, at least in part, the IJ applied an erroneous legal standard.
The IJ’s factual analysis was also faulty. When assessing government unwillingness or inability to control non-state actors, “we consider whether [the] applicant reported the incidents to police.” Baballah v. Ashcroft, 367 F.3d 1067, 1078 (9th Cir.2004). Margo testified that he reported both the 1997 incident and the 1998 incident to the police. As far as he is aware, the police took no action on either complaint. The IJ gave no weight to this evidence, stating instead that, although Margo’s complaints went unresolved, “[t]here is no evidence in this record that the police who took [either of] [Margo’s] report[s] were dismissive of [him], discriminatory, or discourteous to [him].” The manners of the police officers with whom Margo interacted are quite beside the point, given the record evidence that the government was in fact unable or unwilling—or both—to protect him. See Singh v. INS, 94 F.3d 1353, 1360 (9th Cir.1996).
Margo also testified that this lack of protection was common treatment for Chinese Indonesians, and he presented a large amount of country-conditions evidence regarding police corruption and ineffectiveness, and, more specifically, the police force’s tendency to turn a deaf ear to complaints by Chinese individuals. The IJ did not mention any of this evidence, but instead hypothesized that “[t]he lack of results of the police report ... may in fact reflect the difficulty of investigating a mob act or acts where the individual perpetrators may be, and frequently are, anonymous.” There is no evidence in the record supporting this speculation. We conclude that the record compels a finding that the government was indeed unable or unwilling to protect Margo.
Nexus to a protected ground: The IJ suggested that Margo failed to establish that the 1997 and 1998 attacks were “on account of’ his race. Specifically, in relation to the 1997 incident, the IJ stated that “the background materials in [Margo’s] testimony indicate that the civil disturbances in Ujung Pandang at the time were quite general,” and in relation to the 1998 incident, he stated that there were “widespread riots in Indonesia and that the members of the Chinese ethnic community appear to have been the focus of the mob violence that occurred.”
That violent attacks on people of Chinese origin were widespread during the relative periods of 1997 and 1998 does not undercut Margo’s claim that he was attacked on account of his race. The record shows indisputably that the “civil strife” in Ujung Pandang was directed specifically at the Chinese minority, of which Margo is a member. The 1997 State Department Report, for example, noted that “[a]nti-Chi-nese sentiment has led to attacks on Chinese-owned businesses during periods of social unrest, as was seen during the ... Ujung Pandang riots in September [1997] .... in which six people reportedly died, and over 1,000 shops were reportedly damaged .... Most of the destroyed property was targeted because of Chinese connections.”
To the extent the IJ meant to suggest that the fact that many Chinese individuals were being attacked during these periods renders Margo’s own experiences somehow less clearly “on account of’ his race, he erred. See Ndom v. Ashcroft, 384 F.3d 743, 752 (9th Cir.2004) (“[T]he existence of civil strife does not ... make a particular *531 asylum claim less compelling.”). Our review of the record compels the conclusion that Margo has established a nexus to a protected ground. See Duarte de Guinac v. INS, 179 F.3d 1156, 1162-63 (9th Cir. 1999) (“The specific events Guinac described are consistent with the information in the record regarding the general political and social turmoil in that country .... and compel[ ] the conclusion that he was the victim of persecution.”).
Severity: The IJ found that Margo’s “assertion that he had been discriminated against in his educational opportunities”— that is, because he was turned away from high school and university on account of his race—was insufficient to amount to persecution, because “[discrimination does not amount to persecution.” While the IJ was correct that being denied admission to school does not, by itself, constitute persecution, the IJ should have considered this testimony cumulatively with Margo’s other evidence of persistent discrimination throughout his adult life—for example, his testimony that native Indonesians regularly impeded his ability to sell his shrimp by placing logs and large stones in the road to block his way, as well as the stoning of his and his parents’ homes, and the 1997 and 1998 attacks. An accumulation of ethnically-motivated discrimination, harassment, and assaults may constitute past persecution, even though no single episode, on its own, would suffice. Baballah, 367 F.3d at 1076.
Margo’s showing of cumulative past persecution is at least as strong as the petitioner’s was in Baballah. Margo, unlike Baballah, was seriously physically beaten upon one occasion. Consequently, the record compels a finding that the cumulative mistreatment Margo suffered, culminating in the 1997 and 1998 attacks, amounts to past persecution.
On remand, by virtue of his showing of past persecution, Margo will be entitled to a presumption that he faces a clear probability of future persecution unless the government is able to show, by a preponderance of the evidence, that there has been a “fundamental change in circumstances” in Indonesia such that Margo’s fear is no longer reasonable, or that there is a reasonable possibility of internal relocation. 8 C.F.R. § 208.16(b)(l)(i)(A)-(B).
Because we conclude that Margo established past persecution and remand to the agency for further proceedings, we do not reach the question of whether Margo established an objectively reasonable fear of future persecution.
B. CAT Relief
Margo has not adduced any evidence that he or any other Chinese Christian faces a likelihood of being tortured, rather than persecuted, upon return to Indonesia. See 8 C.F.R. § 1208.17; Zheng v. Ashcroft, 332 F.3d 1186, 1188 (9th Cir.2003). As in Wakkary v. Holder, 558 F.3d 1049 (9th Cir.2009) also decided today, we conclude that substantial evidence supports the BIA’s determination as to Margo’s ineligibility for CAT relief. See Wakkary, 558 F.3d at 1067-68.
CONCLUSION
As to Margo’s claim for withholding of removal, the BIA’s finding that Margo did not suffer past persecution is not supported by substantial evidence. We therefore remand to the BIA to determine whether the government can rebut the presumption of future persecution that arises by virtue of Margo’s showing of past persecution. We deny the petition for review with regard to the agency’s denial of CAT relief.
*532 The petition for review is GRANTED in part and DENIED in part.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.

. Because the IJ found Margo credible, we take Margo's testimony as true. See Vukmiro-vic v. Ashcroft, 362 F.3d 1247, 1251 (9th Cir.2004).

. On appeal, the BIA adopted the IJ's decision with a slight rephrasing: "[The 1997 and 1998 attacks] were mob attacks not participated in, or acquiesced in, by the government.” (Emphasis added.) Assuming that the BIA meant to add an alternative, legally sufficient ground for denial by averting to the "unable or unwilling” standard (thus correcting the IJ's erroneous insistence that government officials actively participate in the mob violence for that violence to amount to persecution), the BIA’s conclusion is nevertheless unsupported by substantial evidence, as discussed below.