## MATTER OF O, et al.

### In Exclusion Proceedings

### A-22432000, et al.

*Decided by Board May 12, 1977, and September 14, 1977*

(1) This proceeding involves 126 aliens who were applicants for admission to the United States. They were brought to Guam on United States military aircraft as part of the evacuation of Vietnam. While they were not natives of Vietnam, they had Vietnamese spouses and had Vietnamese children. Most had been employed by U.S. Government contractors. The Service contends that these aliens were not paroled into the United States but that their inspection was deferred. The applicants contend they were paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act and therefore entitled to prior notice before exclusion proceedings were begun.

(2) It is the opinion of the Board that these applicants were paroled. The procedure employed in bringing them to the United States was no different from the procedure used to bring aliens to the United States who concededly were paroled under section 212(d)(5) of the Act. The correspondence written by the Attorney General and Commissioner to the Congress would appear not to limit the use of the parole authority solely to natives of Vietnam. Congress, in defining the term "refugee" used a definition broad enough to encompass the present applicants which supports the conclusion that these applicants were not to be treated differently than native–born Vietnamese. The applicants were persons who had lived in Vietnam. The majority of them had been employed at one time or another by U.S. Government contractors. They were removed from Vietnam with the express consent of the United States Government. These facts taken together lead to the conclusion that the applicants were paroled into the United States.

(3) Under 8 C.F.R. 212.5(b) an alien is entitled to written notice of termination of parole prior to the institution of exclusion proceedings. These aliens were paroled; however, the Service did not provide them with written notice of termination of their parole prior to the institution of exclusion proceedings, as required by 8 C.F.R. 212.5(c). The Service motion for reconsideration of the Board's decision terminating the exclusion proceedings is denied.

EXCLUDABLE:

Order: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no visa

ON BEHALF OF APPLICANTS:
Jack Wasserman, Esquire
Wasserman, Orlow, Ginsberg & Rubin
1707 H Street, N. W.
Washington, D. C. 20006

ON BEHALF OF SERVICE:
Paul C. Vincent, Esquire
Chief Trial Attorney

**Before the Board May 12, 1977**

BY: Milhollan, Chairman; Wilson, Maniatis, and Appleman, Board Members

These cases are before us on appeals from decisions of an immigration judge finding each applicant excludable from the United States under section 212(a)(20) of the Immigration and Nationality Act. Each applicant was brought to the United States territory of Guam by United States authorities in the course of evacuating various persons from the Republic of Vietnam in April and May 1975. The total number of these evacuees numbered approximately 130,000. Exclusion hearings were conducted on September 8 and 9, 1975. In each hearing, several applicants appeared before the immigration judge simultaneously. In all, six hearings are involved concerning 126 aliens. In turn, these matters were consolidated on appeal and argued as one case before the Board.

In each instance, the applicant was brought to Guam on military aircraft. It appears that some of the applicants had "affidavits" [1] from the United States Embassy; others had had their passports stamped by an embassy official. In either case, the possession of the affidavit or the stamped passport was sufficient documentation to enable each applicant to board United States military aircraft or vessels and to be brought to United States territory. None of the applicants, which was apparently the case with all alien evacuees regardless of nationality, had visas in their possession. All of the applicants were born in countries other than Vietnam, a fact which seems to underlie these exclusion proceedings.

In each case, the immigration judge found that the applicants had not been paroled into the United States; that their inspection had merely been deferred and that they therefore were excludable under section 212(a)(20) of the Act. The applicants contend that they were paroled into the United States pursuant to section 212(d)(5) of the Act, and therefore were entitled to a written notice of revocation of parole prior to the institution of exclusion proceedings. See 8 C.F.R. 212.5. No such notice was given since the Service took the view that parole had not been granted. The applicants also argue that even if they were not paroled, the Government is equitably estopped from excluding and deporting them since they were brought here by the United States and with full knowledge that they lacked visas at that time. Finally, the applicants argue that any exclusion order is ineffective since they cannot, in any event, be returned to the Republic of Vietnam, which they argue is the "country from whence they came" and the only country to which they may be returned under section 236 of the Act.

In none of the six cases does the immigration judge's decision contain a detailed discussion with respect to each applicant. The transcripts also

---

[1] The nature of these affidavits is not entirely clear from the record. However, it appears that there were forms normally used by the Embassy for matters other than parole.

do not reveal much individual information. However, all but one [2] of the 126 aliens who are involved were interviewed by Service officers prior to the exclusion hearings. The transcripts of these interviews were introduced into evidence in each instance. [3]

Although the status and backgrounds of the majority of the applicants is similar, there are enough differences to warrant fuller discussion. For convenience, each joint hearing will be referred to separately by the name of one alien.

The immigration judge's decision in *Ho Joo Wong* concerns 33 aliens. Thirty-two are Koreans and one is a native and citizen of India. All but four of this group had worked, at least at one time, for United States Government contractors. Among the four who did not is the Indian native, who was self-employed, and one Korean who was a seaman, but who lived in Saigon. Seven of this group are married to Vietnamese women. One other, although married to a Vietnamese, had not divorced his Korean wife. Five other applicants admitted to "common-law" relationships with Vietnamese women. They had been in Vietnam for a period of nine years, eight months, to two years. The large majority had arrived in Vietnam prior to 1970. Several had initially entered Vietnam as members of the Army of the Republic of Korea and had remained after discharge and, ultimately, taken employment with United States contractors. Four indicated they were permanent residents of Vietnam, or intended to become such.

In *Yonk Sik Ko*, 37 aliens are involved. Five are Chinese and the remainder are Koreans. Of this group, eleven Koreans had Vietnamese wives and, in most instances, children. One Chinese had a Vietnamese wife. One other Chinese applicant had two children who were born in Vietnam, but whose wife was a Chinese citizen. He was a permanent resident of Vietnam. One other Chinese citizen indicated that he had intended to become a permanent resident.

All but a few of these applicants had been employed by United States contractors. Two of the Chinese had worked for Air America. All these applicants had been in Vietnam prior to evacuation for periods ranging from five years to nine years and six months.

*U Soon Yi* concerns 18 aliens. This group is more diverse. Seven are Koreans, three are Laotians, [4] six are Filipinos and two are Chinese.

---

[2] The one applicant who does not appear to have been interviewed is the wife of an applicant who was interviewed and who furnished information about his wife.

[3] In four of the hearings, the applicants were represented by counsel. With respect to these hearings, counsel objected to the introduction of the written statements. This objection has not been pursued on appeal.

[4] None of the Laotians were in Vietnam at the time of evacuation but were evacuated from Thailand. One of the Laotians was born in Vietnam, but indicated that she was a Laotian citizen. The other two had no connection whatever with Vietnam.

One of the Chinese natives claimed Vietnamese citizenship, but lacked proof to establish his claim. As in the other cases, some of the applicants had Vietnamese wives. At least four, three Filipinos and one Chinese, appeared to be permanent residents of Vietnam. Most of these applicants had also worked at one time for United States contractors.

Eighteen aliens are involved in *Chong Ku O.* All are Koreans. None appeared to have any family ties in Vietnam other than "common-law" wives, and, in some cases, children born of such relationships. At least one applicant had never been employed by a United States contractor. None had been in Vietnam prior to evacuation for a period of less than five years; some had been in Vietnam for nearly nine years. One applicant had a Form I-94 which indicated that he had been paroled into the United States at Hawaii. He was thereafter airlifted to Guam.

In *Moon Sik Paik*, 15 aliens are involved. All are Koreans. Fourteen of these worked for United States contractors, at least at one time, while in Vietnam. None had Vietnamese families. The aliens in this group had been in Vietnam for periods ranging from nine years and two months to four years and three months.

Finally, five aliens are involved in *Duk Hyon Chen.* All are Koreans. Three had worked for United States contractors, and one for a component of the United States Army. The fifth alien entered Vietnam as a member of the Army of the Republic of Korea. It is not clear whether he ever worked for a United States Government contractor. Four of these applicants arrived in Vietnam in 1967; the other in 1971.

## I

Under section 212(d)(5):

> The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Under the regulations, the authority to grant parole has been delegated to the District Director of the port of entry in which the alien seeks to come to the United States 8 C.F.R. 212.5(a). The regulation contemplates in the ordinary situation that parole will be granted at such time as an alien presents himself for inspection in the United States. However, 8 C.F.R. 212.5(c) makes provisions for the granting of advance parole. Under this portion of the regulation an alien outside the United States, but who will be coming to the United States, may seek parole pursuant to section 212(d)(5). In the usual circumstance, if parole is

granted, he will be issued Form I-512. See also Operations Instruction 212.5(c). If an alien has been paroled, "parole may be terminated on written notice to the alien and he shall be restored to the status which he had at the time of parole and further inspection or hearing shall be conducted under section 235 and 236 of the Act. . . ." 8 C.F.R. 212.5(b). It is clear upon these records that none of the applicants were issued Form I-512. However, it also appears that none of the other approximately 130,000 alien evacuees who came to the United States from Vietnam was issued such a form, regardless of nationality. Thus, procedurally, these aliens were treated no differently than any others being brought to United States territory from Vietnam in April and May 1975.

As we understand the position of the Service, these aliens were not paroled into the United States, but merely brought to this country by the United States Government for a determination to be made on arrival whether they would then be paroled. We are unaware of, and the Service had not provided us any authority making it lawful for the Government to bring these aliens to the United States other than the parole authority granted the Attorney General under section 212(d)(5) of the Act. No special legislation was enacted which would have permitted the entry of such a group of aliens. The term "parole" is not defined in the Act itself, nor in the regulations. We are unaware of any cases, either of the courts, or this Board, which define "parole." The Service's own Operations Instructions also do not define parole. Neither counsel for the respondents nor the Service have pointed us to any source which would define the term.

However, in 1975, there was a significant amount of correspondence between the Attorney General, the Commissioner of Immigration and Naturalization, the State Department, and members of Congress, concerning the status of the evacuees. This correspondence has been reprinted as an appendix to the Staff Reports of the Senate Subcommittee to Investigate Problems Connected with Refugees and Escapees of the Senate Committee of the Judiciary, 94th Congress, 1st Session [hereinafter Staff Reports]. These letters were referred to at oral argument by the counsel for the applicants and the appellate trial attorney for the Service.

It is clear from these letters that the legal authority invoked for bringing the aliens from Vietnam to the U.S. was section 212(d)(5) of the Act.[5] The April 18, 1975, letter from the commissioner indicates that initially, the INS intended to parole certain classes of Vietnamese war

---

[5] E.g., Letter from Roger J. McCloskey, Assistant Secretary for Congressional Relations, Department of State, to Senator Edward M. Kennedy (April 24, 1975) *reprinted in* Staff Reports, App. III at 157; Letter from L.F. Chapman, Commission of Immigration and Naturalization, to Senator James O. Eastland, (April 18, 1975) *reprinted in* Staff Reports, App. IV at 162.

refugees. These included certain Cambodians in Thailand, a small number of South Vietnamese in the Philippines, approximately 3,000 Vietnamese for whom visa petitions had been filed, a larger number of Vietnamese nationals who were immediate relatives of United States citizens or close relatives of lawful permanent residents, and certain other Cambodian refugees and diplomats.[6] In an April 22, 1975, letter, the Commissioner states that an additional class of 50,000 natives of Vietnam who were in a "high risk" category because of their close association with the U.S. Government in Vietnam were to be paroled by the Service.[7] A letter of April 28, 1975, from the Secretary of State to the Attorney General requested that the "high risk" categories of Vietnamese be expanded to include former employees of United States firms operating in Vietnam.[8]

We note that the letter to this time referred to Vietnamese natives or nationals of Vietnam. However, in a letter from the Commissioner to the Chairman of the Senate Judiciary Committee, the "high risk" category was to include "five types of Vietnamese persons" and such class was to be expanded.[9] In a letter dated July 15, 1975, the Commissioner noted that there were on Guam a number of families whose principal member was not Vietnamese. It was proposed that they all be treated as refugees.[10] The references in this letter were to "refugees" and not specifically to Vietnamese natives.

These letters, standing by themselves, are inconclusive as to whether or not non-Vietnamese aliens who were evacuated by the United States were intended to be paroled into the United States. We do note, however, that the early correspondence refers to Vietnamese natives, while later correspondence does not. Also, as with certain non-Vietnamese refugees discussed in the Commissioner's letter of July 15, 1975, several of the present applicants appear to have family or other ties to Vietnam.

Additional factors also must be considered. Congress, in an attempt to assist the evacuees, passed legislation which permitted funding for the necessary costs of bringing the refugees to the United States. This legislation, enacted on May 23, 1975, is known as the Indochina Migra-

---

[6] *Id.*

[7] Letter from L.F. Chapman, Commissioner, to Senator James O. Eastland (April 22, 1975) *reprinted in* Staff Reports, App. IV at 164. See also Letter from Edward H. Levi, Attorney General, to Senator James O. Eastland (April 22, 1975) *reprinted in* Staff Reports App. IV at 164, 165.

[8] Letter from Henry A. Kissinger to Edward H. Levi, (April 28, 1975) *reprinted in* Staff Reports, App. IV at 167.

[9] Letter from L.F. Chapman, to Senator James O. Eastland (April 28, 1975) *reprinted in* Staff Reports, App. IV at 168.

[10] Letter from L.F Chapman to Senator James O. Eastland (July 15, 1975) *reprinted in* Staff Reports, App. IV at 170–171.

tion and Refugee Assistance Act of 1975, Pub. L. 94–23 89 Stat. 87. Section 3 of this Act defines the term "refugee" as:

> . . . aliens who (A) because of persecution or fear of persecution on account of race, religion, or political opinion, fled from Cambodia or Vietnam; (B) cannot return there because of fear of persecution on account of race, religion, or political opinions; and (C) are in urgent need of assistance to the essentials of life."

This definition on its face does not restrict the term refugee to natives of Vietnam or Cambodia exclusively. A review of the legislative history does not add any further light on the bare definition contained in the Act itself. Similarly, a review of the floor debates appearing in the Congressional Record [11] also does not amplify this definition any further.

The present applicants would seem to fall within the definition of refugee as provided in the Indochina Migration and Refugee Assistance Act of 1975. They are aliens; they did apparently, or at least claim to have fled Vietnam for fear of persecution because of race, religion, or political opinion. They, just as native-born Vietnamese, would not be able to return there for the same reasons and apparently were in need of assistance for the essentials of life. Those aliens who are permanent residents of Vietnam would indeed appear most likely to be those non-Vietnamese who Congress intended to be included within this definition of refugee. Although this term by itself does not indicate that these applicants were meant to be encompassed within the parole authority of the Attorney General, it does tend to the conclusion that the assistance was not being limited merely to Vietnamese nationals.

Counsel for the applicants at oral argument raised as an additional matter the contention that these applicants could not be returned to a country other than Vietnam, since that is "the country from whence they came." See section 236 of the Act. While we do not pass on that argument, we note that there is case law that holds "the country from whence he came" means the last country where an alien applicant had a place of abode. *United States* v. *Holland-America Line,* 231 F.2d 373 (2 Cir. 1956); see also *Menon* v. *Esperdy,* 413 F.2d 644 (2 Cir. 1969); *United States ex rel. Shung* v. *Murff,* 176 F. Supp. 253 (S.D.N.Y. 1959), affirmed 274 F.2d 667 (2 Cir. 1960). In this case each of the present applicants other than those noted [12], was either a resident or domiciliary of Vietnam. Thus the country to which they will have to be returned would normally be the Republic of Vietnam. This would appear to lend further support to the idea that Congress intended to include the present applicants within the term "refugee" since if they were not admissible they might, in theory, be returned to Vietnam.

---

[11] 121 Cong. Rec. H4039 et seq. (daily ed. May 14, 1975).

[12] See note 4, *supra.*

There are, then, several points which, taken together, persuade us that these applicants were paroled. The procedure employed in bringing the applicants to the United States apparently was no different from the procedure used to bring aliens to the United States who concededly were paroled pursuant to section 212(d)(5) of the Act. The correspondence from the Attorney General and the Commissioner of Immigration and Naturalization to Congress would appear not to limit the use of the parole authority solely to natives of Vietnam. Congress, in defining "refugee," used a definition broad enough to encompass the present applicants, which in turn lends some support to the conclusion that these applicants were not to be treated differently than native-born Vietnamese. They were "persons" who had lived in Vietnam. The majority of them had been employed at one time or another by the United States Government contractors. They were removed from Vietnam with the express consent of the United States Government. All this taken together leads to the conclusion that the applicants were, in fact, paroled.[13]

## II

Since we conclude that the applicants were paroled pursuant to section 212(d)(5) of the Act, the question remains as to what effect this will have on these exclusion proceedings. Under 8 C.F.R. 212.5(b), the applicants are entitled to written notice of termination of their parole prior to the institution of exclusion proceedings. This was not done and the exclusion proceedings were prematurely instituted. At a minimum then, the records must be returned to the Service. The applicants must be given notice of termination of parole before further proceedings may occur.[14]

However, due to the peculiar circumstances of this case, the Service may wish to consider more than merely furnishing the applicants a written notice of revocation and then reinstating exclusion proceedings. In the past, in cases involving similar fact settings, hearings have been

---

[13] At oral argument counsel also placed some reliance on cases concerning aliens who had been brought to the United States involuntarily. See *United States ex rel. Sommerkaup v. Zimmerman*, 178 F.2d 645 (3 Cir. 1949); *United States ex rel. Paetan v. Watkins*, 164 F.2d 457 (2 Cir. 1949; *United States ex rel. Bradley v. Watkins*, 163 F.2d 328 (2 Cir. 1947). These cases are distinguishable since the present applicants do not claim to have been brought to the United States involuntarily nor is there any indication they wish to withdraw their applications for admission.

[14] Counsel for the applicants also argues that in any event the Government would be equitably estopped from excluding these applicants. In view of the disposition we made of this case we need not address that contention. Nonetheless, absent the finding of affirmative misconduct, the Government would not be equitably estopped from deporting or excluding aliens from the United States. See *Matter of Morales*, Interim Decision 2416 (BIA 1975). See generally *Hibi v. INS*, 414 U.S. 5 (1913).

held in which aliens have been given the opportunity to contest revocation of parole. See *United States ex rel. Paktorovics* v. *Murff*, 260 F.2d 610 (2 Cir. 1958). If a similar course were followed here, the issue could be met whether non-Vietnamese nationality, in itself warranted an alien being treated differently from the other parolees.[15] Since we have concluded that these applicants were in fact paroled, the Service may, of course, choose to place the applicants in extended parole status rather then to revoke parole. We recognize that the decision to grant, revoke, or extend parole is within the province of the District Director and that any appeal from that decision lies elsewhere than to the Board.

**ORDER:** The exclusion proceedings are terminated.

**Before the Board September 14, 1977**

BY: Milhollan, Chairman; Wilson, Maniatis, Appleman, and Maguire, Board Members

This case is before us on motion of the Service requesting that we reconsider our decision dated May 12, 1977, in which we terminated exclusion proceedings of 126 aliens brought to the United States territory of Guam by United States authorities as part of their attempt to evacuate persons from South Vietnam during April and May 1975. The primary basis for our decision was our finding that the applicants had been paroled into the United States pursuant to section 212(d)(5) of the Act and that, therefore, they were entitled to written notice of termination of their parole prior to the institution of exclusion proceedings.

The Service argues that, although the applicants were paroled on Guam pending disposition of their applications to stay in the United States as refugees, it was not necessary to formally revoke parole before instituting exclusion proceedings.

Whether the applicants had been paroled initially upon arrival on Guam, or were paroled after arrival, as now conceded by the Service, is immaterial. It is a fact that they were paroled. Under these circumstances, the regulations require that notice be given, perhaps so that the District Director may consider an extension of parole in a given case, rather than placing the aliens in exclusion proceedings im-

---

[15] In this connection we note that the three Laotians, Huong Chan, Somphone Xongnixay, and Chan Thone Saladouangchanik, all appear to have secured passage under false names and possible false claims of Vietnamese citizenship. The Service may wish to consider this in connection with extension or revocation of parole.

mediately.[1] Whatever the reason for the regulation, it exists, and it was not complied with.

The regulation in question is clear. Under 8 C.F.R. 212.5(b), aliens are entitled to written notice of termination of their parole prior to the institution of exclusion proceedings. Inasmuch as we have found that the applicants here were, in fact, paroled into the United States, there is no reason to look behind the clear meaning of the words used in the regulation. In addition, we note that any parole status is temporary. It makes no difference whether the purpose of the parole was to allow the applicants to enter while a determination is made on their present applications for asylum, or on a review of a previous grant of asylum,[2] or for some other purpose. The regulations require that before a parole status is revoked, the alien shall receive notice of the Government's intention.

We note in passing, that the fact that these aliens resided for long periods in South Vietnam before being evacuated by United States authorities, further complicates the serious legal issues raised if they are not treated as other parolees in like circumstances and parole is sought to be revoked without notice solely because they are not native-born Vietnamese.

Accordingly, we will not retreat from our prior decision and the motion will be denied.

**ORDER:** The motion is denied.

## APPENDIX

| | | | | |
|---|---|---|---|---|
| A22 056 081 | CHAN, Sang Ho | | A22 056 027 | YI, U Soon |
| A22 056 089 | KIM, Chi Duk | | A22 056 032 | AN, He Seon |
| A22 056 095 | LEE, Ju Bok | | A22 056 036 | KIM, Tong Chi |
| A22 056 103 | KIM, Kwang Ui | | A22 056 106 | OH, Boo Ken |
| A22 056 108 | KIM, Yu Myong | | A22 056 317 | IGNAGIO, Victor A. |
| A22 056 240 | KIM, Hae Young | | A22 055 162 | CHAN, Huong |
| A22 056 266 | CHO, Sung Ok | | A22 055 163 | SOMPHONG, Xongnixay |
| A22 056 268 | JUN, Huyng Kon | | A22 055 164 | CHAN THONE, |
| A22 056 269 | HWANG, Kyung Ok | | | Sonladovangchanh |
| A22 056 270 | CHOE, Pok Su | | A22 056 291 | YI, Se Kun |
| A22 056 273 | IM, Yon Yong | | A22 056 299 | KIM, Ki Hong |
| A22 056 285 | HWANG, Sang In | | A22 056 314 | DOMINGO, Jose V. |
| A22 056 289 | LEE, Duk Ho | | A22 056 315 | ASISTORES, Rogelito A. |
| A22 056 296 | KIM, Kap Sin | | A22 056 322 | LUU, Dung Tuyen |
| A22 056 326 | LEE, Ju Hun | | A22 056 330 | FINES, Eugenio Castillo |
| A22 056 337 | KANG, Tae Un | | A22 056 331 | PAVILONIA, Gavino P. |
| A22 056 340 | CHAI, Hyun Joo | | A22 056 338 | MENDOZA, Jose C. |

[1] This procedure also permits an alien to withdraw his application for admission to the United States on occasion and to leave voluntarily, before the institution of exclusion proceedings.

[2] See *United States ex rel. Paktorovics v. Murff*, 260 F.2d 610 (2 Cir. 1958).

APPENDIX

| | | |
|---|---|---|
| A22 056 342 | KIM, Im Sock | |
| A22 051 742 | CHU, Hok Shun | |
| | | |
| A22 056 092 | PAIK, Moon Sik | |
| A22 056 096 | KIM, Im Sock | |
| A22 056 101 | LEE, Han Suk | |
| A22 056 109 | KIM, Bong Ha | |
| A22 056 112 | LEE, Sung Mo | |
| A22 056 267 | CHANG, Jung Ryang | |
| A22 056 271 | KIM, Bok Dong | |
| A22 056 279 | LIM, Chong Ok | |
| A22 056 284 | YANG, Jin Sook | |
| A22 056 293 | RA, Myung Chin | |
| A22 056 295 | YI, Yun Chi | |
| A22 056 297 | LEE, Sang Soo | |
| A22 056 327 | SHIM, Un Hong | |
| A22 056 329 | MOON, Jung Yul | |
| A22 010 842 | CHOI, Yoo Bae | |
| A22 056 080 | CHA, Hyun Duk | |
| A22 056 088 | KANG, Young Ki | |
| A22 056 107 | KANG, Suk Dong | |
| A22 056 310 | LEE, Young Kook | |
| A22 056 334 | LEE, Wook Chong | |
| | | |
| A21 432 001 | HWANG, Ho Joo | |
| A22 056 033 | KIM, Kwang Sohn | |
| A22 056 034 | KIM, Poom Hoon | |
| A22 056 035 | KIM, Ho Bum | |
| A22 056 037 | KUM, Do Sun | |
| A22 056 038 | CHOI, Sung Ki | |
| A22 056 039 | LEE, Sok Rae | |
| A22 056 040 | KIM, Su Kil | |
| A22 056 082 | HUH, Yoo Soon | |
| A22 056 083 | PAK, Hyun Pil | |
| A22 056 084 | CHOE, Ki Woung | |
| A22 056 085 | LEE, Dae Bong | |
| A22 056 086 | CHUN, Dong Ok | |
| A22 056 087 | JUN, Kwang Sam | |
| A22 056 090 | LEE, Ju Tai | |
| A22 056 091 | KIM, Ki Hyun | |
| A22 056 094 | NAM, Chong Uk | |
| A22 056 097 | PAK, Chun Ho | |
| A22 056 098 | KANG, Song Kun | |
| A22 056 099 | SONG, Ki Soo | |
| A22 056 100 | YI, Yong Hui | |
| A22 056 102 | LEE, Dae Bok | |
| A22 056 110 | LEE, Wong Son | |
| A22 056 104 | LEE, Ho Sun | |

| | | |
|---|---|---|
| A22 056 105 | KIM, Tong Chol | |
| A22 056 111 | YUN, Young U | |
| A22 044 152 | HERKISHNANI, Lachhman | |
| A22 044 201 | CHOI, Doo Hyon | |
| A22 056 264 | BAK, Soon Hwan | |
| A22 056 265 | CHA, Won | |
| A22 056 272 | KANG, Song Jik | |
| A22 056 274 | HONG, Sung Joo | |
| A22 056 275 | LEE, Joo Kwang | |
| | | |
| A22 056 093 | KO, Yong Sik | |
| A22 056 276 | SU, Sa Gil | |
| A22 056 277 | KIM, Yong Kak | |
| A22 056 278 | CHUNG, Jun Hun | |
| A22 056 280 | YI, Too Yul | |
| A22 056 281 | YI, Soo Ja | |
| A22 056 286 | YOON, Hwa Young | |
| A22 056 288 | KIM, Sung Ku | |
| A22 056 290 | WON, Yong Hai | |
| A22 056 292 | HONG, Che Chin | |
| A22 056 294 | CHANG, Tu Kuk | |
| A22 056 298 | KIM, Sok Kyu | |
| A22 056 306 | YU, Foo Chen | |
| A22 056 307 | MA, Huai Teh | |
| A22 056 308 | LAU, Chun Pong | |
| A22 056 309 | KIM, Young Joung | |
| A22 056 311 | KANG, Chun Hyong | |
| A22 042 323 | CHUNG, Chang Ho | |
| A22 056 323 | SHIH, Min Kung | |
| A22 056 324 | NAM, Soo Bok | |
| A22 056 325 | SU, Chong Wan | |
| A22 056 328 | SOK, Byong Hwan | |
| A22 056 332 | NAM, Kyung Hee | |
| A22 056 333 | YI, Su Tae | |
| A22 056 335 | PAK, Chae Ho | |
| A22 056 336 | SIN, Hyong Kyun | |
| A22 056 339 | LEE, Moo Kun | |
| A22 056 341 | HWANG, Khu Hyon | |
| A22 056 344 | SU, Tai In | |
| A22 056 352 | KOO, Young Hoe | |
| A22 056 353 | LEE, Won Ki | |
| A22 002 659 | LEE, Won Tae | |
| A22 034 756 | CHU, Hwang Kuai | |
| A22 010 841 | CHUNG, Jhoon Ki | |
| A22 431 905 | YOON, Sung Ho | |
| A22 056 316 | LEE, Kyong Ok | |
| A22 056 343 | KIM, Young Ki | |