**CHONG SHIN CHEN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–73473.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 2004.

Filed Aug. 10, 2004.

---

Alan Sampson, San Francisco, CA, for the petitioner.

Ethan B. Kanter and Regina Byrd, United States Department of Justice, Washington, DC, for the respondent.

Before WALLACE, KOZINSKI, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

In this petition for review, we consider whether the summary affirmance of an Immigration Judge's ("IJ") decision by the Board of Immigration Appeals ("BIA") violated the BIA's streamlining regulations. We conclude that because the legal issue presented was not squarely controlled by existing BIA or federal court precedent, the BIA erred in summarily affirming the IJ's decision. We grant the petition for review and remand the petition to the BIA.

I

Chong Shin Chen, a native and citizen of the People's Republic of China, entered the United States without inspection on December 15, 1989. A day later, he was taken into custody by the Immigration and Naturalization Service ("INS"), served with an Order to Show Cause charging that he was deportable from the United States, and released on bond. His case was administratively closed when he did not show up for a scheduled hearing.

In August 1990, William S. Slattery, District Director of the INS, informed Chen by letter that the Attorney General had granted Chen "deferred enforced departure" status pursuant to Executive Order 12,711 until January 1, 1994. The communication also apprised Chen that: "You have the right to apply for any immigration benefit for which you believe you may be eligible even though you are in this program."

Executive Order 12,711, under which Chen was granted deferred enforced de-

parture status, was issued by President George H.W. Bush on April 11, 1990, in the wake of the Tiananmen Square uprising in Beijing, China. It provided:

> By the authority vested in me as President by the Constitution and laws of the United States of America, the Attorney General and the Secretary of State are hereby ordered to exercise their authority, including that under the Immigration and Nationality Act (8 U.S.C. 1101–1557), as follows:

> Section 1. The Attorney General is directed to take any steps necessary to defer until January 1, 1994, the enforced departure of all nationals of the People's Republic of China (PRC) and their dependents who were in the United States on or after June 5, 1989, up to and including the date of this order (hereinafter "such PRC nationals").

> Sec. 2. The Secretary of State and the Attorney General are directed to take all steps necessary with respect to such PRC nationals (a) to waive through January 1, 1994, the requirement of a valid passport and (b) to process and provide necessary documents, both within the United States and at U.S. consulates overseas, to facilitate travel across the borders of other nations and reentry into the United States in the same status such PRC nationals had upon departure.

> Sec. 3. The Secretary of State and the Attorney General are directed to provide the following protections: (a) irrevocable waiver of the 2–year home country residence requirement that may be exercised until January 1, 1994, for such PRC nationals; (b) maintenance of lawful status for purposes of adjustment of status or change of nonimmigrant status for such PRC nationals who were in lawful status at any time on or after June 5, 1989, up to and including the date of this order; (c) authorization for employment of such PRC nationals through January 1, 1994; and (d) notice of expiration of nonimmigrant status (if applicable) rather than the institution of deportation proceedings, and explanation of options available for such PRC nationals eligible for deferral of enforced departure whose nonimmigrant status has expired.

> Sec. 4. The Secretary of State and the Attorney General are directed to provide for enhanced consideration under the immigration laws for individuals from any country who express a fear of persecution upon return to their country related to that country's policy of forced abortion or coerced sterilization, as implemented by the Attorney General's regulation effective January 29, 1990.

> Sec. 5. The Attorney General is directed to ensure that the Immigration and Naturalization Service finalizes and makes public its position on the issue of training for individuals in F–1 visa status and on the issue of reinstatement into lawful nonimmigrant status of such PRC nationals who have withdrawn their applications for asylum.

> Sec. 6. The Departments of Justice and State are directed to consider other steps to assist such PRC nationals in their efforts to utilize the protections that I have extended pursuant to this order.

> Sec. 7. This order shall be effective immediately.

The effect of the Executive Order was, under the authority of the President, to suspend the enforced departure until January 1, 1994 of any People's Republic of China national who was in the United States. In furtherance of the policy concerns underlying the Executive Order, Congress enacted the Chinese Student Protection Act of 1992 ("CSPA"), 8 U.S.C.

§ 1255, which altered permanently the standard adjustment of status process for Chinese nationals who met the statute's requirements. In September 1993, Chen filed a timely application with the INS for adjustment of status under the CSPA. His application was denied on the ground that he entered the United States without inspection, and was therefore inadmissible under INA section 245(a). In his deportation hearing, he argued that he was in fact admissible under section 245(a) because he had been effectively paroled into the country by having had his enforced departure deferred. The IJ disagreed and pretermitted his application for adjustment of status, but granted him voluntary departure. On appeal to the BIA, he renewed this argument, and also argued that he was eligible to apply for adjustment of status under section 245(I). The BIA summarily affirmed pursuant 8 C.F.R. § 3.1(a)(7) (now located at 8 C.F.R. § 1003.1(a)(7)). Chen timely filed this petition for review.

## II

Chen raises a novel question that has not been addressed by the BIA or this Court. He argues that the source of the President's power to issue Executive Order 12,711 could only derive from the power to grant parole. Thus, Chen reasons, a grant of deferred enforced departure status must be construed as a grant of parole, which would make Chen eligible for adjustment of status under the CSPA.

Chen's argument has support in BIA precedent. In *Matter of O*, 16 I. & N. Dec. 344 (1977), the BIA considered the status of 126 aliens who were brought to the United States as part of the evacuation of Vietnam and sought admission to the United States. *Id.* at 345. The INS contended that the aliens had not been paroled into the United States, but rather, their inspection had been deferred.

Therefore, the INS contended, they could not be admitted to the United States because they had entered without inspection. *Id.* at 348.

In reviewing the claims, the BIA conducted a careful statutory analysis and concluded that the only legal authority for allowing the aliens to stay in the United States was the advance parole authority contained in section 212(d) of the Immigration and Naturalization Act ("INA"), which provides:

> The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served, the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

In determining the legal basis for the aliens' presence in the United States, the BIA noted:

> We are unaware of, and the Service had not provided us, any authority making lawful for the Government to bring these aliens into the United States other than the parole authority granted the Attorney General under section 212(d) of the Act.

*Matter of O*, 16 I. & N. at 348.

Accordingly, the BIA held that the applicants had been paroled into the United States and could not be treated as liens

who had entered the country without inspection.

Chen argues that his situation is indistinguishable because the Executive Order provided temporary legal harborage in the United States, and the only possible source of such authority is the parole provisions of the INA. He argues that his release on bond upon entry into the United States was based on the same considerations as those in *Matter of O*, and that the Executive Order confirmed the advance parole status. Therefore, he reasons, the IJ erred in denying his application solely on the basis that he was in the United States illegally, and the BIA erred in affirming summarily.

### III

To address a burgeoning caseload and a growing adjudicatory delay, the INS promulgated regulations in 1999 to "streamline" administrative appeals. *See Executive Office for Immigration Review; Board of Immigration Appeals: Streamlining*, 64 Fed.Reg. 56,135 at 56,135–36 (Oct. 18, 1999). Prior to adoption of the streamlining regulations, a three judge BIA panel would review an IJ's decision. The streamlining regulations authorized a single BIA member to affirm the IJ's decision without opinion if:

> the Board Member determines that the result . . . was correct; that any errors . . . were harmless or nonmaterial; and that (A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or (B) the factual and legal questions raised on appeal are so insub-

stantial that three-Member review is not warranted.

8 C.F.R. § 1003.1(a)(7)(ii).

■ Because the BIA's decision does not indicate which subsection of the streamlining regulation it found to authorize summary affirmance, we consider whether either subsection applies. It is clear in this case that subsection (A) provided no authority for the BIA to streamline Chen's administrative appeal.[1] There is no BIA or federal court precedent that squarely controls the precise legal issue presented by Chen. He has raised a novel legal and factual issue.

■ As for subsection (B), the determination that three-Member review is not warranted is limited to those appeals in which "the factual and legal questions raised on appeal are . . . insubstantial." We afford an agency a great deal of deference when it interprets its own regulations. *Lal v. INS*, 255 F.3d 998, 1004 (9th Cir.2001). "However, we need not defer to the BIA's reading of an INS regulation if an alternative reading is compelled by the regulation's plain language." *Id.* (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)) (alterations and internal quotation marks omitted). The questions raised in Chen's appeal cannot be described as "insubstantial." Resolution of the legal and factual issues raised by Chen affects every People's Republic of China national who entered the United States illegally but was then granted deferred enforced departure status by Executive Order 12,711, a sweeping Order that applied to every People's Republic of China national who was in the United States at the time. *Cf. Ma v. Ashcroft*, 361 F.3d 553, 559 (9th Cir.

---

1. Chen also argues that application of the streamlining procedures to him violated his right to due process. However, this contention is foreclosed by *Falcon Carriche v. Ash-*

croft, 350 F.3d 845 (9th Cir.2003), in which we considered and rejected similar due process challenges. *Id.* at 850–52.

2004) (holding that it is inappropriate to defer to the agency's interpretation of its governing statute when that interpretation leads to absurd results).[2]

Because neither subsection (A) nor subsection (B) of the streamlining regulation permits summary affirmance, the BIA erred in streamlining this case, and we must remand to the BIA for its reconsideration.

## IV

██ The government argues that we lack jurisdiction to review the BIA's decision to streamline. When the underlying IJ decision is based on a discretionary factor, the government is correct because IIRIRA limits our jurisdiction. *Falcon Carriche*, 350 F.3d at 855 ("[W]e are without jurisdiction to review whether the BIA improperly streamlined this appeal of a cancellation of removal decision in which only the discretionary 'exceptional and extremely unusual hardship' factor is in dispute."). Additionally, under the venerable principle of federal administrative procedure, we lack jurisdiction over any administrative decision that comes within the "narrow" class of decisions "committed to agency discretion by law." *Heckler v. Chaney*, 470 U.S. 821, 826, 838, 105 S.Ct.

1649, 84 L.Ed.2d 714 (1985); 5 U.S.C. § 701(a)(2).

██ However, we do not lack jurisdiction over nondiscretionary agency determinations. *See, e.g., Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997) (holding under IIRIRA's transitional rules that "[a]s to those elements of statutory eligibility which do not involve the exercise of discretion, direct judicial review remains."). "[A]n inquiry is discretionary where it is a 'subjective question' that depends on the value judgment 'of the person or entity examining the issue.'" *Romero–Torres v. Ashcroft*, 327 F.3d 887, 891 (9th Cir.2003) (quoting *Kalaw*, 133 F.3d at 1151).

Indeed, *Falcon Carriche* quite clearly rejected the government's position in this case—that there is no federal court jurisdiction over any aspect of the streamlining decision. We noted in that case: "Although we agree with the government's ultimate conclusion, we do not embrace the government's argument that the streamlining decision is inherently discretionary. Indeed, portions of the streamlining decision are non discretionary determinations that we would ordinarily have jurisdiction to review." 350 F.3d at 852–53. *See also id.* at 855 ("[This] situation stands in contrast to cases where we have jurisdiction to review the merits. . . . In those cases we

**2.** The dissent argues that intraagency concerns may have motivated a finding that Chen's claim was too insubstantial to warrant three-member review. While we agree that such concerns may influence the Board's decision to streamline a case, they cannot trump the regulation's clear language limiting streamlining to cases "squarely controlled" by precedent or at least arguably "insubstantial." To the extent the dissent assumes that such concerns can be dispositive, we have already rejected the argument that the streamlining decision is a wholly discretionary decision over which we would lack jurisdiction under 5 U.S.C. § 701(a)(2). *See infra Part IV* (citing *Falcon Carriche*, 350 F.3d at 852–53, 855). The dissent further argues that

Chen's appeal was so meritless it was insubstantial. While we agree that frivolous claims could be insubstantial, *Matter of O* indicates that Chen's argument is more than colorable. *See supra Part II.* Finally, the dissent appears to argue that we can assume the BIA reached Chen's argument and rejected it. However, the regulations indicate that when the BIA streamlines a case, it only "approves the result" reached by the IJ, not the "reasoning." 8 C.F.R. § 1003.1(a)(7)(iii). *See also Tokatly v. Ashcroft*, 371 F.3d 613, 621 n. 7 (9th Cir. 2004) ("That the BIA did not intend to modify its rule or otherwise create any precedential law in this case is evident from the fact that the appeal was 'streamlined.' ").

would, as a technical matter, have jurisdiction to review the BIA's streamlining decision . . . .").

Application of subsection (A) of the streamlining regulation is clearly non-discretionary, as it can only be invoked when "the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation." Application of subsection (B) is also not discretionary. It can only be invoked when the factual and legal issues presented are "insubstantial." While the agency's determination that the issues presented are "insubstantial" will often warrant deference, at times that determination would be absurd, as in this case.

■ Of course, as we pointed out in *Falcon Carriche*, in most cases, review of the IJ's decision on the merits and the streamlining decision "collapse into one analysis." 350 F.3d at 853 n. 7; *see also Garcia–Martinez v. Ashcroft*, 371 F.3d 1066, 1078 (9th Cir.2004). However, the decision to streamline despite the presence of novel legal questions, a complex factual scenario, and applicability to numerous other aliens is not such a situation. *See Falcon Carriche*, 350 F.3d at 854 ("We . . . express no opinion on whether, although rare, a truly novel case could arise for which a decision to streamline could be found erroneous as a matter of law . . . .").

■ When confronted with a novel legal issue, we could decide the case based on application of law to the facts. However, we believe the better course in this case is to remand to the agency for its consideration of the issue in the first instance. This is particularly true where, as in the case at hand, the central question is application of the BIA's own precedent.

We therefore grant the petition for review and remand to the BIA for its reconsideration. We express no opinion as to the merits of the petition.

**PETITION GRANTED AND CASE REMANDED.**

WALLACE, Circuit Judge, dissenting:

Not content to decide the issues Chen presents in his petition for review, the majority strains his argument to bring within its cross hairs bigger game. Nowhere in his petition for review does Chen contend that the Board of Immigration Appeals (Board) failed to comply with its streamlining regulations in affirming, without opinion, the Immigration Judge's (IJ) ruling that he was inadmissible for permanent residence under Immigration and Nationality Act (INA) section 245 *(a)*, 8 U.S.C. § 1255(a). Chen does challenge the Board's streamlining decision, but he clearly limits his attack to the Board's determination (or, as he alleges, lack thereof) regarding INA section 245 *(i)*, 8 U.S.C. § 1255(i). Moreover, Chen's claim is *constitutional*, not *regulatory*. The IJ had no occasion to address section 245(i) in her order, for Chen first broached the matter on appeal to the Board. For the Board to then affirm without opinion, Chen maintains, deprived him of "any explanation of the agency's decision on the particular issue" and consequently "violate[d his] due process rights." In contrast, Chen acknowledges that the IJ's section 245(a) ruling now stands as the final agency decision, thereby implicitly conceding that the Board properly streamlined it.

Logically, General Ashcroft's discussion of the Board's streamlining decision mirrors Chen's. The Attorney General confines his response to the constitutional issue, as he rightly understands Chen to assert "that the Board's decision . . . violates due process because the Board failed to address his § 245(i) argument, an argu-

ment that was not raised before the immigration judge."

Given that the parties have neither raised nor briefed the issue of the Board's regulatory compliance, our practice dictates that we not consider it here. *See, e.g., Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir.2003) ("In general, we will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." (internal quotation marks, brackets, and citations omitted)). We adhere to this approach for sound prudential reasons. *See, e.g., Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."); *Abovian v. INS*, 219 F.3d 972, 981 (9th Cir. 2000) (Wallace, J., dissenting) ("There is a risk that the court, lacking the analysis ordinarily provided by adversarial parties, will reach the wrong conclusion on the merits and create poor precedent ...."). The majority nonetheless ignores these principles and proceeds, unguided by the parties, to issue a precedent–setting decision on a significant issue. Since I disagree with the course the majority charts, I dissent.

## I.

We have yet to adjudicate a petition for review based solely on the merits of a Board decision to streamline—and for good reason. *See, e.g., Tokatly v. Ashcroft*, 371 F.3d 613, 615 n. 1 (9th Cir.2004) (declining to reach the petitioner's claim "that the [Board] violated its own regulations in deciding to streamline this appeal"); *Vukmirovic v. Ashcroft*, 362 F.3d 1247, 1253 (9th Cir.2004) (declining to decide a similar claim). When affirming without opinion, the Board's order must follow a standard script: " 'The Board

affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. See 8 CFR 1003.1(a)(7).' " 8 C.F.R. § 1003.1(a)(7)(iii). Any "further explanation or reasoning" is prohibited. *Id.* Such compelled administrative succinctness leaves little of substance to review. *Cf. Ngure v. Ashcroft*, 367 F.3d 975, 985 (8th Cir.2004) (concluding that the Board's streamlining determinations "are not amenable to judicial consideration").

Even if the Board's streamlining decision were more transparent, our review of it will almost always prove "unnecessary and duplicative." *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 855 (9th Cir.2003). We have recognized that

> [t]he nature of the streamlining procedures ... makes [appellate] review ... both impractical and unnecessary.... In deciding whether to streamline a case, the individual [Board] member analyzes the merits of the IJ's decision to determine if the decision was correct, if the factual situation is novel, or if any errors were harmless. Similarly, in order to determine whether these streamlining factors were properly applied, we, too, would be required to examine the merits of the IJ's decision; otherwise we could not assess whether the decision was correct or whether it met other streamlining criteria.

*Id.* at 853–54 (internal citation omitted). As a practical matter, then, "[t]he decision to streamline becomes indistinguishable from the merits. Were we to find an error, we would either grant relief if permitted or simply remand to the [Board] to proceed in a manner consistent with our decision." *Id.* at 855. In short, "where we can reach the merits of the decision by the IJ or the [Board], an additional review of the streamlining decision itself would be superfluous." *Id.*

It is true that *Falcon Carriche* left open the possibility that "a truly novel case could arise for which a decision to streamline could be found erroneous as a matter of law under the third prong of the [Board] regulations." *Id.* at 854. One day, a petitioner no doubt will stake claim to the "truly novel case." At that moment we will have an argument on point from the petitioner as well as the benefit of the Attorney General's defense. But Chen's petition presents no such claim. Moreover, as will be shown hereafter, the Board's decision to streamline the IJ's section 245(a) ruling is certainly *not* "erroneous as a matter of law under the third prong of the [Board] regulations."

### A.

*Falcon Carriche* does not clearly specify which clause constitutes "the third prong of the [Board] regulations," but it does cite to 8 C.F.R. § 1003.1(a)(7)(ii)(A), which is one (i.e., (A)) of two (i.e., (A) and (B)) subclauses of subsection (a)(7)(ii)'s third general criterion. The majority assumes that "the third prong" includes both subclauses. This interpretation seems logical, as the subclauses are phrased in the disjunctive; an error under subclause (A) would not doom the Board's decision to streamline if the Board correctly applied (B). At least for arguments sake, then, I will follow the majority's lead and consider both subclauses.

Before doing so, however, I flag here an issue overlooked by the majority: the governing standard of review. Not only does the majority fail to analyze and decide which standard to adopt, but the majority also neglects to state explicitly which standard it is applying. Although standards of review are critical to our function as an appellate court, particularly when we have the decision of an administrative agency before us, I do not endeavor to answer the question conclusively; regardless of the applicable standard, the Board's decision should be upheld. I mention only that some deferential standard clearly is in order here since the Board's interpretation of its own regulations "is entitled to great judicial deference." *Zurich Am. Ins. Co. v. Whittier Props., Inc.,* 356 F.3d 1132, 1137 (9th Cir.2004); *see also Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (stating that an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation" (internal quotation marks and citations omitted)).

### B.

I am willing to concur with the majority's empirical observation that there is scant case law dealing with the relationship between section 245(a) and deferred enforced departure, and that consequently "[t]here is no [Board] or federal court precedent that squarely controls the precise legal issue presented by Chen." *See* 8 C.F.R. § 1003.1(a)(7)(ii)(A). However, contrary to what the majority at times suggests, this far from resolves the matter at hand. The more critical subclause in Chen's case—and I suspect the typical petitioner's—is subclause (B). Under this provision, the Board may affirm without opinion if "the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted." *Id.* § 1003.1(a)(7)(ii)(B). According to the majority, whether a question qualifies as "so insubstantial that three-Member review is not warranted" depends on how many individuals it impacts. Thus, the questions raised in this case are not insubstantial because they "affect[ ] every People's Republic of China national who entered the United States illegally but was then granted deferred enforced departure status by Executive Order 12,711, a sweep-

ing Order that applied to every People's Republic of China national who was in the United States at the time." The majority's interpretation fails to give full meaning to the regulation's text. The number of petitions an issue touches might be relevant, but it certainly is not *determinative;* at least two other factors are at play.

First, the regulations authorize the Board to take account of institutional concerns—the full inquiry is whether the issue is "so insubstantial *that three-Member review is not warranted." Id.* (emphasis added). The recent Eighth Circuit decision in *Ngure v. Ashcroft,* 367 F.3d 975 (8th Cir.2004), is instructive in this regard. The court analyzed the streamlining regulations' other formulation of the criterion in subclause (B), one phrasing the standard as whether "[t]he factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case." 8 C.F.R. § 1003.1(e)(4)(i)(B). The Eighth Circuit explained that

> [w]hether a particular case "warrants the issuance of a written opinion" is necessarily a function of the [Board]'s limited resources at a particular point in time, and the views of members of the [Board] as to whether those limited resources should be dedicated to writing an opinion in a given case. That decision about allocation of resources turns on a determination by the [Board] members, given their expertise in the field and their experience in reviewing thousands of administrative appeals, whether the administration of the immigration laws would be enhanced by publishing an opinion.

*Ngure,* 367 F.3d at 986. In other words, in determining whether "the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted," 8 C.F.R.

§ 1003.1(a)(7)(ii)(B), we must be mindful that intraagency considerations may be driving the Board's decision, lest we interfere too quickly in its internal affairs.

Second, a factual or legal question would be "insubstantial" if its resolution is a foregone conclusion. That is, whereas subclause (A) considers whether an issue "is squarely controlled by existing Board or federal court precedent," *id.* § 1003.1(a)(7)(ii)(A), subclause (B) operates as a catchall for issues "squarely controlled" by other binding legal authority, for example, a legal question whose answer is evident on the face of a statute. This example governs here: since it is clear that the relevant statutory sections precluded the Immigration and Naturalization Service (INS) and IJ from adjusting Chen's status, the "factual and legal questions raised on [his] appeal [were] so insubstantial that three-Member review [was] not warranted." *Id.* § 1003.1(a)(7)(ii)(B).

### C.

INA section 245(a) provides that "[t]he status of an alien *who was inspected and admitted or paroled* into the United States" and who meets certain other conditions "may be adjusted by the Attorney General." 8 U.S.C. § 1255(a) (emphasis added); *see also* 8 C.F.R. § 1245.1(b)(3) (listing "[a]ny alien who was not admitted or paroled following inspection by an immigration officer" among those "ineligible to apply for adjustment of status to that of a lawful permanent resident alien under section 245 of the [INA]"). The Chinese Student Protection Act of 1992 (CSPA) dispensed with many of section 1255's requirements, *see* CSPA, Pub.L. No. 102–404, § 2, 106 Stat. 1969, 1969–71, but did not affect subsection (a)'s prerequisite that the alien be "inspected and admitted or paroled," *see Tang v. Reno,* 77 F.3d 1194,

1197 (9th Cir.1996) ("Simply stated, Congress did not waive the requirement that a Chinese national attempting to take advantage of the CSPA must have entered the country legally through inspection and admittance or parole."). Because Chen was never "inspected and admitted or paroled," he is ineligible, pursuant to the statutes' plain meaning, to adjust his status. Nevertheless, Chen maintains—and the majority holds plausible—that being granted deferred departure and being released on bond was the "functional equivalent" of being paroled because parole is the only way his "temporary harbor-age is sanctioned." Numerous defects plague this reasoning.

For starters, the majority ignores the scope of Executive Order 12,711. *See* Exec. Order No. 12,711, 55 Fed.Reg. 13,-897 (Apr. 11, 1990). Although the Executive Order provided for the "maintenance of lawful status for purposes of adjustment of status ... for such [Chinese] nationals *who were in lawful status* at any time on or after June 5, 1989," *id.* § 3(b), 55 Fed. Reg. at 13,897 (emphasis added), it did not grant any type of lawful status to those Chinese nationals who did not possess it already. *See Qi–Zhuo v. Meissner,* 70 F.3d 136, 140 (D.C.Cir.1995) (observing that the Executive Order "calls for the 'maintenance of lawful status ...' *only for* 'such· [Chinese] nationals who were in lawful status at any time on or after June 5, 1989' " (emphasis added)). Instead, the Order instructed the Attorney General "to take any steps necessary to defer until January 1, 1994, the enforced departure of all nationals of the People's Republic of China ... who were in the United States on or after June 5, 1989." Exec. Order No. 12,711 § 1, 55 Fed.Reg. at 13,897. In practical terms, the Executive Order simply directed the INS to stay its hand in enforcing the departures of certain illegal Chinese nationals. Given its limited re-

sources, the INS must set enforcement priorities: though it is aware that millions of unknown aliens are present in the United States unlawfully, it cannot possibly pursue them all simultaneously and with equal vigor. Executive Order 12,711 recognized this reality and formalized a temporary arrangement whereby other matters would take precedence over locating and deporting Chinese nationals.

In that sense, it is an overstatement to assert that the Executive Order "sanctioned" Chen's presence in the United States. In fact, he *never* attained any level of lawful status. The INS's letter informing Chen that it was deferring enforcement of his departure clearly states that "this program does not give you a lawful status in the United States and you may not be eligible for adjustment of status or certain other benefits under the [INA]." Being released on bond likewise had no effect on Chen's status. *See* 8 C.F.R. § 242.2(c), (d) (1989). Moreover, the record indicates that the INS denied Chen's application for advanced parole.

Lastly, it is not true "that the source of the President's power to issue Executive Order 12,711 could only derive from the power to grant parole." Executive Order 12,711 tapped all of the Attorney General's and Secretary of State's "authority, including that under the Immigration and Nationality Act (8 U.S.C. 1101–1557)." Exec. Order No. 12,711, 55 Fed.Reg. at 13,897. The parole provision, 8 U.S.C. § 1182(d)(5), is located within that statutory range, but so are a number of other relevant sections. For example, at the time of the Executive Order's promulgation, 8 U.S.C. § 1103 charged "[t]he Attorney General ... with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a) (1989). One of the enforcement

powers would be to deport Chen for being an alien who "entered the United States without inspection," *id.* § 1251(a)(2) (1989), which would occur "upon the order of the Attorney General," *id.* § 1251(a) (1989). By conditioning deportation on "the order of the Attorney General," section 1251 permits the Attorney General to exercise some discretion over the commencement of proceedings to order Chen deported-discretion the Attorney General could use to set enforcement priorities.

Citing *Matter of O,* 16 I. & N. Dec. 344 (1977), the majority opines that "Chen's argument has support in[Board] precedent" (although apparently not enough to be "squarely controlled by existing Board ... precedent," 8 C.F.R. § 1003.1(a)(7)(ii)(A)). The majority's reliance on *Matter of O* is misplaced. In that case, the Board determined that the status of 126 aliens evacuated from Vietnam by United States officials was identical to that of the nearly 130,000 other evacuees who were granted advanced parole. Although the Board acknowledged being "unaware of ... any authority making it lawful for the Government to bring these aliens to the United States other than the parole authority granted the Attorney General under section 212(d)(5) of the Act," *Matter of O,* 16 I. & N. Dec. at 348, the Board's decision did not rest on this proposition. Rather, the Board relied on "several points which, taken together, persuade[d them] that these [126] applicants were paroled" just like the other 130,000. *Id.* at 351. Notably absent from this list of "several points" is the Board's earlier speculation that the parole statute might provide the exclusive authority for bringing the 126 evacuees to the United States. *See id.*

### D.

In releasing Chen and deferring enforcement of his deportation, the INS in no way granted him the "functional equivalent" of parole which would enable him to seek adjustment of status under INA section 245(a). We can and should deny his petition for review as to this argument on the merits. If, though, we must conduct the majority's "superfluous" "additional review of the streamlining decision itself," *Falcon Carriche,* 350 F.3d at 855, the disposition stays the same. Since relevant provisions of law clearly foreclose the relief Chen seeks, "the factual and legal questions raised on appeal [were] so insubstantial that three-Member review [was] not warranted." 8 C.F.R. § 1003.1(a)(7)(ii)(B).

### II.

Chen's remaining contentions are without merit. His argument that he is eligible to adjust his status under INA section 245(i), 8 U.S.C. § 1255(i), fails in light of *Chan v. Reno,* 113 F.3d 1068 (9th Cir. 1997). *Falcon Carriche* disposes of his due process challenge of the Board's streamlining decision. *See Falcon Carriche,* 350 F.3d at 851 (holding that it is not "a due process violation for the [Board] to affirm the IJ's decision without issuing an opinion").

### III.

The majority thinks "the better course in this case is to remand to the agency for its consideration of the issue [of Chen's parole] in the first instance." Either the majority overlooks that the Board already has considered the issue, or the majority refuses to take the Board's word for it. In streamlining Chen's appeal, the Board chose to adopt the IJ's decision rejecting Chen's argument that he secured the "functional equivalent" of parole. *See* 8 C.F.R. § 1003.1(a)(7)(iii) ("An order affirming without opinion ... approves the result reached in the decision below; it

does not imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any error in the decision of the [IJ] or the [INS] were harmless or nonmaterial."). Since the IJ's analysis is correct, there is no reason to review the Board's subsequent decision to affirm without opinion, let alone disturb it. I accordingly dissent.